JAMES H. BAY, Attorney in fact of VIRGINIA B. HYN-
SON and VIRGINIA B. HYNSON *vs.* SAMUEL POSNER.

*Deed—Omission of Name of Grantee in Granting clause—
Powers of Administrator with Will annexed—Mistake in
Descriptions—Adverse possession—False recital in Deed.*

The omission of the name of the grantee from the granting clause
of a deed does not impair the validity of the deed, such name
fully and clearly appearing on the face of the deed.

Section 283 of Article 93 of the Code provides that "where a testa-
tor directs his real estate to be sold, and the testamentary execu-
tor refuses or declines to act * * * the Orphans' Court shall
have power to appoint an administrator *de bonis non cum testamen-
to annexo*, to execute the trusts of the will in the same manner
and to the same extent as the executor or executors appointed by
will could or might do." HELD:

That where a will authorizes and empowers the executors to sell
any portion of the estate as they may deem best, and upon such
terms as they may think proper, and such executors decline to
act, the administrator with the will annexed succeeds to all the
power and authority to sell which the original executors derived
from the will.

Where the owner of land and his predecessors have been in actual
possession of a lot of ground for more than forty years, and
during all that time have had deeds for said lot duly executed
and recorded, and the descriptions in the deeds, with one excep-
tion, have corresponded exactly with the lines of occupation,
the title to such lot is not affected by a mistake in the description
of some of the old deeds.

The title of the purchaser of a lot properly described in the deed,
is not affected by the conveyance, on the same day, of an adjoin-
ing lot by the same grantor to a different grantee, properly
describing the lot conveyed by courses and distances, and erro-
neously reciting that said lot was "the same lot conveyed by W.
H. H. to said B. T. H., recorded in Liber A. M., No. 331, folio
352," although said recital referred to the lot described in the
former deed.

APPEAL from the Circuit Court of Baltimore City.

This is an appeal from a *pro forma* decree in an amicable suit for specific performance of a contract of purchase of a piece of property in Baltimore City, instituted by the appellants against the appellee to determine the title of the property involved.   In 1802, Daniel Deady died seised and possessed of a considerable estate, of which the leaseholds in lots A, B, C, D and E on the plat marked "S. P. No. 1," constituted a part.   In 1804, Christopher Johnston, executor of Deady, conveyed the southernmost 22½ (of the 24) feet of lots A and B and the whole of lot E to Winifred Ann Deady, his widow, thus leaving in his estate only the northernmost 1½ feet of lots A and B and the whole of the 22½ feet of lots C and D.   In 1827, in a partition suit instituted in 1826 in the High Court of Chancery for the division of the balance of Daniel Deady's estate two lots were allotted to Gunning S. Bedford.   The *first* was described as beginning at the *south side of a lot assigned by Lewis Salt to Matthias Sittler*, and running south on Howard street twenty-four feet, with a depth of sixty-six feet, being by calls, description and references to title the whole of lot A, the southernmost 22½ (of the 24) feet of which had, as above stated, been previously conveyed to Winifred Ann Deady.   The *second* lot was described in the Commissioners' return as beginning at the *northeast corner of the first lot* (this corner being F on the plat) and running thence east, *binding on the lot conveyed by* Christopher Johnston to Winifred Ann Deady forty feet; thence south, still binding on Widow Deady's lot, 24 feet; thence west 40 feet to the lot leased by Mohler to Deady (lot A,) and then north, binding on the last mentioned lot to the beginning.   There was a plat returned by the Commissioners in the above mentioned partition proceedings; a copy of which will be found herewith, marked S. P. No. 2.

After sundry intermediate conveyances, lots A and B, and the title of Bedford in the lots assigned him by the

Commissioners vested in B. T. Hynson,—the description and references to the title of the Bedford lots in all the deeds being the same as in the Commissioners' return, except that they gave the point of beginning of lot "C" as $116\frac{1}{2}$ feet from the northeast corner of Howard and Lexington streets, which would be point "*H*" on the plat. Hynson subsequently acquired the fee in lot "A." Hynson died in 1878, leaving a last will by which, after making a bequest of $20, he devised and bequeathed the rest and residue of his estate to his four children. He did also authorize and empower his executors to sell any part or portion of his estate, real, personal or mixed, at public or private sale as they might deem best, and upon such terms as they might think proper.

Letters testamentary were granted to his executors, William Geo. Hynson and Samuel Snowden. They subsequently resigned and letters of administration *d. b. n c. t. a.* were granted to Samuel Snowden and Orville Horwitz; and the Orphans' Court subsequently passed an order empowering them "to execute the trusts of said will of the said B. T. Hynson, deceased, in the same manner and to the same extent as the executors appointed by said will could or might have done." On January 18, 1878, these administrators sold lots "A" and "B" to William Geo. Hynson and Charles E. Hynson (whose title is now vested in Virginia B. Hynson, the appellant) and lots C. and D to a certain Rouse, whose title was subsequently acquired by James Broumel. The sales were simultaneously reported to and ratified by the Orphans' Court and deeds therefor were simultaneously executed and recorded,—the property conveyed to Rouse being described in the deed as the same lots conveyed by W. H. Hamer to said Benjamin T. Hynson" (the lots conveyed by Hamer to Hynson being "A" and "B.") In November, 1881, Joseph H. Rieman, Jr., owner of the fee simple reversion of lots B and D, sold

and conveyed to James Broumel what according to the calls and references to title would have been lot "B," but according to the number of feet from the corner of Lexington and Howard streets would have been lot D. On the 10th of January, 1882, lot "B" was conveyed by Rieman to William Geo. Hynson and Charles E. Hynson, under whom the appellant claims title. The case having been submitted on bill, answer, exhibits and evidence for a *pro forma* decree in conformity with an agreement of parties, it was by the Court, (WRIGHT, J.,) decreed as follows:

1st. That no cloud rests upon the title of the plaintiffs to the property mentioned in this case by reason of the matters alleged in the answer, so far as regards the deed of trust from Virginia B. Hynson to Thomas J. Shryock, and the proceedings thereunder; and the objections of the defendant to the said title on the ground of the possibility of there being creditors still outstanding, who have an interest in the said property under the said deed of trust are hereby overruled.

2nd. That the deed offered in evidence purporting to be from Alexander Nisbet to David Williamson, dated September 18th, 1810, and recorded in Liber W. G., No. 112, fol. 24, &c., is defective, and the defect aforesaid renders the said title not marketable.

3rd. That the deeds offered, or admitted, as forming the chain of title to the lot claimed by the heirs or personal representatives of James Broumel refer to deeds by which the lot, which is the subject of controversy in this case, was conveyed, and that these deeds forming the chain of title of said James Broumel consequently purport to convey the lot which is the subject of controversy in this case, and are therefore a cloud upon the title of the plaintiffs in this case which renders the title of said plaintiffs unmarketable.

4th. That Samuel Snowden and Orville Horwitz, administrators *d. b. n. c. t. a.* of Benjamin T. Hynson had

no power to sell the real estate by them sold to Charles E. Hynson, or to execute the deed therefor dated December 18th, 1892, and recorded in liber R. T. A., No. 951, folio 347, &c., but that such pretended sale was void and no title passed by said sale or said deed, and that the title to said real estate being a ground rent of about $4 per annum upon a part of the lot which is the subject of controversy in this case is still vested in the heirs of Benjamin T. Hynson, and that this is a defect in the title offered by the plaintiffs in this case to the lot which is the subject of controversy herein which renders said title unmarketable.

5th. That the bill of complaint in this case be dismissed, with costs to the defendant.

From this decree the plaintiffs appealed.

The cause was argued before BRYAN, FOWLER, ROBERTS, McSHERRY, and BRISCOE, J.

*Alfred S. Niles,* (with whom was *Oscar Wolff,* on the brief,) for the appellants.

*M. R. Walter,* for the appellee.

FOWLER, J., delivered the opinion of the Court.

This is one of the many cases which from time to time are brought here on appeal from *pro forma* orders for the purpose of perfecting titles. The law has, wisely, not required that titles to real estate shall be absolutely perfect and free from every possible doubt. In the case of *Gill vs. Wells,* 59 *Md.,* 492, after saying that no general rule can be laid down as to what doubts will be sufficient to make a title not marketable, this language is used: "A threat or even the possibility of a contest will not be sufficient. The doubt must be considerable and rational, such as would

Bay, *et al. vs.* Posner.

and ought to induce a prudent man to pause and hesitate; * * * * such as to produce real, *bona fide* hesitation in the mind of the Chancellor.'' With this statement of the general rule in view, we will proceed to examine the objections relied on by the appellee to show that the title of the appellant to the property in question is not a good and marketable one:

1. That the grantee's name is omitted in the granting clause of one of the deeds under which the appellant claims. Not much reliance was placed upon this objection, and properly so, for we can see no force whatever in it as applied to the deed in question from Nesbit to Williamson, dated 18th September, 1810, and recorded in Liber W. G., No. 112, fol. 24, &c. It is true that the name of Williamson the grantee is omitted from the granting clause; but it fully and clearly appears from the face of the deed that Nesbit was the party of the first part, and Williamson the party of the other part, and that Nesbit sold to Williamson the lot of ground in said deed described, for the sum of three thousand dollars, and that Williamson was the person who was "to have and to hold the said lot of ground, &c.''

This deed appears to contain the requisites of a good deed even under the requirements of our Code; the name of a grantor and the name of one who is "to have and to hold'' the estate intended to be conveyed; a consideration, and a description sufficient to identify the premises, and the interest or estate intended to be conveyed. Code, Art. 21, sec. 9.

2. The second objection is, "that the sale of the original fee reversion by the administrator, *d. b. n. c. t. a.*, of Benjamin T. Hynson, under whom the appellants claim title was unauthorized by law and void.'' By his last will Hynson devised and bequeathed all the residue of his estate, including his interest in the lot in question, to his children, and then follows this provision:

"I hereby authorize and empower my executors, here-inafter mentioned, to sell any part or portion of my estate * * * as they may deem best, and upon such terms as they may think proper."

The purpose of such an authority or power given by the testator to his executor is not doubtful. As it might be, and indeed in most cases, is necessary to sell property, and especially city lots, in order to make division or partition among several tenants in common, as in this case, the power to sell is given to executors to avoid the delay and expense of applying to a Court of Chancery. And while in one sense the language here used may not amount strictly speaking to a direction to sell, yet it is quite certain that the intention of the testator was to *direct* the sale to be made by the executors, if a sale was or should be made. The executors named in the will were, on their own petition, relieved from the executorship, and one of them, together with the late Orville Horwitz, were appointed administrators, *d. b. n. c. t. a.*

The circumstances of this case bring it, we think, fairly within the provision of section 283, Art. 93 of the Code, which provides that where a testator directs his real estate to be sold, and the testamentary executor refuses or declines to act * * * * the Orphans' Court shall have power to appoint an administrator, *de bonis non cum testamento annexo,* to execute the trusts of the will, "in the same manner and to the same extent as the executor or executors appointed by will could or might do."

In *Venable vs. Mercantile Trust and Deposit Co.,* 74 *Md.,* 187, it was held that the intention of the Legislature in passing this section of the Code, "was to confer upon the administrator *c. t. a.* all the power and authority to sell which the original executor derived from the will. "Any other construction," it is said in the

Bay, *et al. vs.* Posner.

case just cited, "would force the parties to Chancery proceedings, which it was the object of this Act to prevent."

3. The third and last objection is, that the appellant is not the exclusive owner of the lot in question. It appears from the testimony, however, that she and her predecessors in title have been in actual possession for more than forty years. And it must be admitted that inasmuch as during all that time they have had deeds for said lot, duly executed and recorded, they have been in under color of title—the descriptions in the deeds with the exception of the alleged error, if such there be, having corresponded exactly with the lines of occupation. Under these circumstances it seems to us unnecessary to discuss the effect of the alleged mistake in the description of the lot in one or more of the old deeds, for as we have often said, and have recently reiterated in the case of *Lurman and Fowler vs. Hubner,* 75 *Md.*, 271, continuous adverse possession under color of title for at least twenty years, will make a good title, although the title conveyed by the deed be good for nothing, and here we have more than forty years of such possession. But in addition to this long possession under deeds which appear to be perfectly valid, it must be remembered that no claim has been made by any person to any part of said lot, on any pretence whatever—it being suggested by the appellee now for the first time, so far as appears by the record, that some such claim could or might be made. The *pro forma* decree will be reversed and the cause remanded.

*Decree reversed, and*
*cause remanded.*

Decided 21st June, 1893.)

*S. P. No. 1.*

*Clay* (formerly Wagon Alley) *St.*

*St.*

N

S

*Howard*

These 45 feet include
the whole of the lot in
Deed from Salt to Sitler.

South Side of }
Salt to Sitler }

22½'

45'

22½'

24'

70'-3"

H        66        G        40

C                    D
(*Slippy Lot.*)

F        66        40      E

A                    B
(*Pixler Lot.*)

22½'

24'

*N. E. cor. Daniel Deady's
House.*

E

This lot in heavy lines
was one of the lots con-
veyed in 1804 by Chris.
Johnston Execr. to Wini-
fred A. Deady.

E

*Lexington St.*

# HIGH COURT OF CHANCERY.

ESTATE OF

## DANIEL DEADY.—*Partition.*

*Bill filed April 26, 1826; Decree, Feb. 5, 1827*

Sitlers Lot  1st Beg.  2nd Beg.  Widow Deady's Lot  40 ft.  4 P.

Lot No. 58,
DIVISION C.
———
ALLOTTED TO
GUNNING S. BEDFORD.

HOWARD STREET.

A motion was made by the appellee on the 14th of July, 1893, for a rehearing of the foregoing case on the ground that adverse possession did not apply, and that unless the question of conflicting lines was settled by the Court, its decree would not protect the appellee. The motion was overruled.

Fowler, J., delivered the opinion of the Court.

The motion for rehearing in this case, made by the appellee, will be overruled. He concedes that there is no difficulty whatever in regard to the title to the lot known as No. 207 North Howard street, which he purchased from the appellant, until after the death of Benjamin T. Hynson in the year 1878. When Hynson died he owned the lot just mentioned, and also that immediately adjoining on the north. His administrators sold and conveyed lot 207 North Howard street—lots A and B on the plat marked S. P., No. 1—to William George and Charles E. Hynson, and on the same day they conveyed to James Broumel the other lot known as 209 North Howard street, and designated on said plat S. P., No. 1, as lots C and D. The conveyances of the first named lot, being the one here in question, appear to be entirely correct, and the appellee does not object to *them;* but his contention is, that in the deed from Hynson's administrators to Broumel conveying lot No. 209 North Howard street, while it properly describes that lot, it recites that said lot is "the same lot conveyed by W. H. Hamer to said B. T. Hynson, recorded in Liber A. M., No. 331, folio 532." And the lot so conveyed by Hamer to Hynson, the ₁appellee contends, is the same here in controversy—and that this erroneous recital makes the title of the lot No. 207 fatally defective. But we₂ cannot assent to this view. It is very apparent that the reference to the deed from Hamer to Hynson is a mistake, and the preceding description by courses and distances, conceded

Bay, *et al. vs.* Posner.

to be correct, must govern. A Court of equity will not admit the operation of a recital originating in mistake and untrue in fact, and this being so, the erroneous reference to the deed from Hamer to Hynson may be treated as though it had not been made. But in addition to this, we think it is apparent from an examination of the title deeds that the view of the appellee is not correct. Lot No. 207 North Howard street was conveyed to Winifred A. Deady in 1804 by the executors of her husband, and, as we have said, the conveyances of this lot correctly described it, and are free from objection, except so far as they may be affected by the erroneous recital above referred to. The adjoining lot No. 209, the title to which is not here involved, was allotted to Gunning S. Bedford in the partition proceedings of the estate of Daniel Deady in the High Court of Chancery in 1826, and in those proceedings was described as two lots. It is apparent from an examination of the return of the Commissioners in the partition proceedings just mentioned, together with the plat filed therewith (which is also filed in this case, marked S. P., No. 2) and the subsequent conveyances, that the Commissioners intended to, and did in fact, allot to Gunning S. Bedford the whole of lot No. 209 North Howard street, which was conveyed to Broumel by Hynson's administrators. Notwithstanding the erroneous recital in the Broumel deed, there is enough in the deeds and plats, together with the partition proceedings in the High Court of Chancery, to show that the Broumel lot (No. 209) commenced at a point $116\frac{1}{2}$ feet north from the north-east corner of Howard and Lexington streets, with a front of 24 feet on the east side of Howard street, and a depth of 106 feet, and that it is immediately north of, and adjoining the lot here in question (No. 207) which was sold by the appellant to the appellee. The chains of title to these two lots appear to be perfectly distinct ever since lot 207 was

conveyed to Winifred A. Deady in 1804—since which time, certainly for the last forty years, the appellants and those under whom they claim, as we said in the opinion already filed in this case, have had, according to the testimony, continuous adverse possession. And, according to the true construction of the deeds, it appears that the paper-title of the appellants to lot 207 is free from any valid objection.

> *Motion overruled,*
> *appellee to pay costs.*

(Decided 9th February, 1894.)