## CHARLES HERBOLD ET AL. *vs.* MONTEBELLO BUILDING AND LOAN ASSOCIATION.

*Adverse Possession—Marketable Title.*

Where a leasehold interest was created in certain land more than fifty years ago, but the parties entitled to the reversion- ary interest in the land have been in actual and exclusive possession thereof for more than thirty years, and no attempt has been made during that time to contest their right, there is no reasonable doubt concerning the validity of their title to the leasehold interest by adverse possession; and they may maintain a bill for the specific performance of a contract to purchase the land in fee.

*Decided April 1st, 1910.*

Appeal from the Circuit Court of Baltimore City (HEUIS-LER, J.).

The cause was submitted to the Court on briefs by:

*Emil Budnitz,* for the appellants.

*R. E. Lee Hall,* for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court of Baltimore City requiring the appellants to specifically per- form a contract for the purchase from the appellee of twelve contiguous lots of land on the northwest side of Harford ave- nue between Gorsuch avenue and Washington street, in Bal- timore City. The exact location and dimensions of the lots are shown upon a plat appearing in the record.

The bill alleges the making of the contract and the refusal of the defendants to perform it for the reason alleged by

them that the title to the property was defective and un-marketable. By the contract, of which a copy was filed with the bill as an exhibit, the vendor was required to convey the property "by a merchantable title free of all incumbrances."

The answer admits those allegations, but does not specify the alleged defects in the title. It alleges that the defendants employed the Title Guarantee and Trust Company to examine and insure the title to the lots and that it, after sometime, reported that the title was defective but agreed to insure it for the sum of three hundred dollars which the defendant said was largely in excess of the fee originally agreed upon between him and that company. There is filed with the answer as an exhibit a letter from Curtis D. Tyson an examiner of the Title Insurance Company stating in substance that the title to the property was vested in the vendor, the appellee, subject to the fact that there was no conveyance on record, to the parties under whom the appellee claimed title, of a leasehold estate in the lots created by a lease to one Benjamin A. Willingham on September 1st, 1856, at an annual rent of $100; and that the company would not insure the title unless it was proven to its satisfaction that there had been an adverse possession of the lots by those, under whom the vendor claimed, for a period of twenty years.

No testimony was taken in the Court below, but a written agreement was filed containing a statement of admitted facts. and also stipulating that the testimony taken in the case of *George* v. *Hopper* hereinafter mentioned might be read at the hearing of the case in the Court below and in this Court in case of an appeal. A copy of that testimony appears in the record. The material facts stated in the agreement are as follows:

On September 1st, 1856, Benjamin A. Willingham being then seized of the twelve lots, subject to three mortgages to the North Baltimore Building Association, conveyed them to Hugh and James N. Keys and took back from them a lease thereof for ninety-nine years at an annual rent of one hundred dollars. The Building Association subsequently fore-

closed one of its mortgages which covered the lots designated on the plat as lots Nos. 7, 8 and 9 and bought them in fee at the mortgage sale and after the ratification of the sale they were duly conveyed to it. The association afterwards in 1860 instituted foreclosure proceedings, on its two other mortgages, under which the nine other lots "were sold or offered for sale in fee simple but objections were filed to the sale on March 30th, 1860, and that more than thirteen years thereafter, said objections having been in the meantime neither sustained nor dismissed," the association sold and conveyed all of its title to and interest in the twelve lots to Harrison Hopper by a deed dated May 14th, 1873.

Benjamin A. Willingham who took the leasehold estate in the twelve lots under the lease of September 1st, 1856, from Hugh and James N. Keys, died in 1859, without having conveyed away his interest in them. By his will he directed the lots to be sold and the proceeds invested for the benefit of his widow Ann Rebecca for life with remainder to his children. John Fox was named as executor in the will, but he declined to act whereupon the widow was made administratrix *c. t. a.* She subsequently renounced the will electing to take her legal interest in the estate. No sale of the lots was made as directed by the will.

The agreement filed in the case also states that Harrison Hopper had, by mesne conveyances the last of which was dated June 6th, 1872, acquired the reversion in fee and the rent of $100 in the twelve lots subject to the mortgages to the North Baltimore Building Association.

It further states: "That in the year 1874, said Harrison Hopper instituted ejectment proceedings against Ann R. Raymo (she having remarried) the widow of said Benjamin A. Willingham, and the children of said Willingham, for the possession of said twelve lots, and that said Ann R. Raymo filed her bill of complaint against said Harrison Hopper in the Circuit Court for Baltimore County, praying that said Hopper be restrained from prosecuting said action of ejectment against the complainant, and that he be directed

to convey to her by a good and sufficient deed, all the right and title acquired by him in the said twelve lots (being the premises sued for), under the two deeds to said Hopper hereinbefore mentioned and that a sale might be had of said lots by a decree of the Court, and the proceeds distributed according to the respective rights of the parties and for general relief; that after testimony had been taken in said cause and after a hearing the said Court by its decree dated March 17, 1880, dismissed said bill of complaint with costs to the respondents; that said Ann R. Raymo appealed from said decree to the Court of Appeals of Maryland by which said Court said appeal of said Ann R. Raymo was dismissed with costs to the appellees, at the October term of said Court of Appeals in the year 1880 (56 *Maryland Reports,* unreported cases and recorded in Liber S. C. J., No. 1, folio 205, etc., of opinions unreported)."

The record and opinion in the case of *Raymo* v. *Hopper,* in 56 Md., do not throw much light upon the present controversy. The bill in that case was filled by Mrs. Raymo to have Hopper enjoined from prosecuting his ejectment upon the ground of alleged fraud on his part in procuring the conveyances to himself of the twelve lots of ground in controversy which she alleged had been purchased by him for her use. The Court below dismissed her bill for want of any proof of the alleged frauds and we affirmed its decree on appeal for the same reason.

After Hopper had acquired the lots in the manner already mentioned he mortgaged them along with other property on October 9th, 1888, to Isaac S. George for $5,000. Default having occurred under that mortgage it was foreclosed and the present appellee purchased the lots at the foreclosure sale. As purchaser the appellee excepted to the ratification of that sale upon the same grounds on which the appellant now relies, setting up the same alleged infirmity in Hopper's title to the leasehold estate that we now have before us. The testimony taken under the exceptions to the sale in that proceeding form part of the present record under the agreement al-

ready mentioned.   George Ramming, one of the witnesses, testified in 1908 that he had been living for forty-six years on Harford avenue in the immediate vicinity of the twelve lots and was familiar with them, and that they had been enclosed with a fence until about a year prior to the date of his testimony.   He also said that he moved Mrs. Willingham and her family away from the property about thirty years ago and to the best of his knowledge neither she nor any of her family had ever lived there since or collected any rent therefor, but that Harrison Hopper had been in continuous and actual possession and control of the property and claimed to own it during the thirty years since the Willinghams moved away from it.   During that time there were a number of tenants on the property including McGoven, William Cohen and others.   Hopper frequently visited the property and requested witness to sell or rent it for him.

William Cohen testified that he had rented one of the two frame houses on the property from Hopper sixteen or seventeen years ago and a man by the name of Rollins rented the other one for Hopper who frequently visited the premises.   When the witness rented the house a shoemaker was living in one of its rooms and taking care of the property for Hopper.   After witness vacated the property it was idle for a long time.

William Rollins testified that he was a constable and had acted as agent of the property for Harrison Hopper and had collected the rent from it for him from Cohen and subsequently collected rent for him from other tenants of the property for a period of about eight years.   No one to his knowledge except Hopper ever claimed to own the property or to collect rent from it.

Fountain Walker testified that he had rented one of the houses on the property from William Rollins from August 4th, 1900, to April 24th, 1908.   No one ever collected or attempted to collect the rent from him except Rollins and Hopper the latter claiming to own it.

The agreement also states that Hopper had paid the taxes

on the entire twelve lots in Baltimore County from 1879 to 1888 and in Baltimore City (after the annexation) from 1889 to 1896 and that from 1879 to 1908 they were assessed to him upon the tax books and the taxes were assessed, levied and paid in his name.

It further states that the Court records show that since 1880 no suit or proceeding has been filed or instituted in any Court of Record in Baltimore County or City by Ann Raymo the widow of Benjamin A. Willingham or by any one claiming under her or him against Harrison Hopper or any one claiming under him for the recovery or possession of the said twelve lots of ground or any part-thereof or any interest therein.

None of the conveyances or proceedings by which the transmutations of the title to the twelve lots of ground in question are said to have been effected appear in the record, but, assuming their operation and effect to have been correctly stated in the agreement of record by which the parties have seen fit to bind themselves, we think the learned Judge below committed no error in passing the decree appealed from.

Harrison Hopper, under whom the appellee claims title, is conceded by the agreement of record to have acquired by conveyances the reversion in fee in the 12 lots with the rent of $100 as early as June 6th, 1872, subject to the claims of the Building Association as mortgagee, and to have acquired all of the title of that association by its conveyance to him of May 14th, 1873. In fact the only doubt as to the soundness of the title seriously set up in the appellant's answer to the bill, or relied on in its brief upon the appeal, is the possibility of an outstanding leasehold interest in some one claiming under Benjamin Willingham.

Whether Hopper be regarded as having taken possession of the property as owner of the reversion and ground rent or as assignee of the Building Association mortgages, without reference to his rights as owner of the ground rent, his possession of the property, in the manner mentioned, for thirty

years accompanied by the payment of the taxes thereon and the fact that in all that time no one has attempted in any Court to contest his title were sufficient to established such legal and marketable title in him as to enable the appellee as plaintiff below to maintain its bill for specific performance. *Sadtler* v. *Peabody Heights Co.,* 66 Md. 1; *Allen* v. *Van Bibber,* 89 Md. 434; *Bay* v. *Posner,* 78 Md. 49; *Reiman* v. *Wagner,* 74 Md. 478; *Lurman* v. *Hubner,* 75 Md. 268; *Gill* v. *Wells,* 59 Md. 492; *Dickerson* v. *Kirk,* 105 Md. 638.

It has frequently been held by this Court that in cases like the present, which are *in personam* and not *in rem,* the Court does not undertake to pronounce with certainty that the title is either good or bad but whether it is free from reasonable doubt. A mere threat or a possibility of a contest will not be sufficient to induce the Court to refuse to grant specific performance. The doubt must be a rational one and such as would induce a prudent man to hestitate about taking the title. *Gill* v. *Wells, supra; Herzberg* v. *Warfield,* 76 Md. 449; *Bay* v. *Posner, supra; Chew* v. *Tome,* 93 Md. 244; *Erdman* v. *Corse,* 87 Md. 506; *Rother* v. *Sharp St. Station,* 85 Md. 528.

Failing to find in the record any good ground for reasonable doubt as to the soundness of the title to the lots in question we will affirm the decree.

*Decree affirmed with costs.*