## HYLAND P. STEWART

*vs.*

## BARBARA KREUZER, ET AL.,

AND

## BARBARA KREUZER, ET AL.,

*vs.*

## THOMAS KREUZER, ET AL.

*Sales in equity: ratification;. parties; purchase with knowledge of claims against property; purchaser estopped from objecting; interest. Adverse possession: no bar to specific performance of contract of sale.*

A purchaser can not be heard to object to completing a contract for the sale of property, upon the mere ground that title depends on adversary possession. pp. 9-10

In proceedings for the ratification of a trustee's sale, it is not necessary that all persons be made parties who by any remote possibility might have some claim against the property. p. 10

The mere threat or possibility of a contest will not be sufficient to induce a court to refuse a specific performance of a contract of sale; to justify such refusal, the doubt must be a rational one, and one which would induce a prudent man to hesitate about the title. p. 11

At a trustee's sale the contract provided that the balance of the purchase money would become due upon a ratification of

the sale by the court; there was considerable delay before the sale was in fact ratified; but as the delay did not appear to have been caused solely by the purchaser, it was: *Held,* that he should be charged with interest only from the day of ratification, and not from the day of sale. p. 11

*Decided November 10th, 1915.*

Cross-appeals from Circuit Court No. 2 of Baltimore City. (AMBLER, J.)

The facts are stated in the opinion of the Court.

The causes were argued together before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Warren A. Stewart,* for Hyland P. Stewart.

*John M. Requart,* for Barbara Kreuzer, et al.

BURKE, J., delivered the opinion of the Court.

The appeals in this case were taken from two decrees of Circuit Court No. 2 of Baltimore City, passed on the second and nineteen days of December, 1914. The decree of December 2nd ratified and confirmed a contract of sale, hereinafter particularly mentioned, of the property known as No. 214 W. Saratoga Street in Baltimore City. This contract was entered into between Joseph C. Lautner, as agent for the owners, and Hyland P. Stewart, as purchaser. As the decision on Mr. Stewart's appeal must rest largely upon the provisions of the contract, in connection with the evidence in the record, the contract will be here inserted:

"This Agreement, Made this 26th day of September, nineteen hundred and thirteen, between Joseph C.

Lautner, the Agent for the owners, Barbara Kreuzer, life tenant, Thomas Kreuzer, Joseph Kreuzer, Dr. William G. Muench, guardian of Thomas, Ruth, Paul and Joseph Muench, of the first part, and Hyland P. Stewart, of the second part;·

"Witnesseth, That the said party of the first part do hereby bargain and sell unto the said party of the second part, and the latter doth hereby purchase from the former the following described property, situate and lying in Baltimore City and known as No. 214 W. Saratoga street as now in possession and occupancy of said owners.

"At and for the price of ($13,375.00) thirteen thousand three hundred and seventy-five dollars, of which $375.00 have been paid prior to the signing hereof, and the balance is to be paid as follows:

"It being understood that this sale is made subject to the ratification of the Circuit Court. It being nec-essary that a case be filed in said Court between the owners of said property before said property can be sold. Immediately upon ratification of sale the entire balance of the purchase money to become due.

"And upon payment as above of the unpaid purchase money, a deed for the property shall be executed at the vendee's expense by the vendor, which shall convey the property by a good and merchantable title to the ven-dee.

"Taxes and water rent, but no sewerage charges, to be paid or allowed for by the vendor to date of trans-fer, nineteen hundred and commissions to broker, M. A. Catling, to be paid by purchaser. Present tenant has a lease from year to year expiring October 31st, 1913, at a rental of $840 per annum, one month's no-tice sufficient to terminate tenancy, which notice own-ers will at once give."

The property which is the subject of the contract was in the possession of Christopher Kreuzer at the time of his death. He took possession of the property under a deed to

him from Hiram Woods and others, dated April 28, 1874. The possessory lines of the property are shown by the record, and embrace the identical property occupied and enjoyed by Mr. Kreuzer during his life, and comprehend the exact property "in the possession and occupancy" of the vendors at the date of the contract.

Mr. Kreuzer died in July, 1878, and by his last will and testament the property was devised to his wife for life, or as long as she might remain his widow, and upon her death or remarriage to his children and their descendants. His estate has been fully administered and all his debts have been paid.

Mr. Kreuzer left surviving him his widow, Barbara, who is now over 70 years of age and has never remarried, and who is one of the appellees on this record, and four children. Two of these children are now dead. One died intestate and unmarried, and the other left surviving her four children who are now minors. The record shows that all persons in being who have any interest in the property under the will of Christopher Kreuzer, or by reason of intermarriage with any one of his children are parties to this cause.

On the 2nd of October, 1913, the bill in this case was filed under section 228, Article 16, of the Code for the sale of the property. It charged that Christopher Kreuzer and Barbara, his wife, as life tenant, have enjoyed the exclusive, adverse and absolute possession of the land, which is described in the bill and which was contracted to be sold, for a continuous and uninterrupted period of more than 39 years, and that the land has been enclosed for that period. It then set forth facts showing that it would be advantageous to all parties concerned that the property be sold and the proceeds be invested in some safe security so as to inure in like manner to the benefit of those interested therein under the will of Christopher Kreuzer. It then referred to the contract of sale, which we have transcribed, and charged that the sale was a most advantageous one and that the price for which

the property was contracted to be sold is the best that could
ever be obtained for it.    The specific prayers of the bill are:

"1.    That a decree may be passed for the sale of
said property.

"2.    That the contract mentioned in this Bill be
ratified and confirmed by this Court and a trustee or
trustees be appointed to convey the interest of all par-
ties to this cause, in and to the property herein de-
scribed, to the purchaser, Hyland P. Stewart, upon the
payment of the purchase price, viz, $13,375.00, and
that the proceeds of said sale so made, be invested
under the direction of this Court in some safe and
profitable investment or security so as to inure in like
manner to the use and benefit of the same parties who
would be entitled to said property under the terms,
conditions and provisions of the last will and testa-
ment of Christopher Kreuzer, deceased."

The defendants' answer, filed October 7, 1913, admitted
the facts alleged in the bill, and consented to the sale as
prayed, and on October 8, 1913, the general replication was
filed.    Nothing further appears to have been done until the
23rd of March, 1914, a period of more than five months, and
on that day Mr. Stewart, as purchaser, filed a petition in
the case in which it was alleged, *first*, that one of the objects
of the suit was to establish by adversary possession the right
and title in the plaintiffs to a strip of land about four feet.
one and one-half inches of irregular dimensions on the west
side of the property; that this strip of land was in conflict
with the lines of the adjoining property on the west owned
by Morrow Brothers, who had mortgaged the same in 1905
to the Fidelity Trust Company, and that the mortgage was
still outstanding and unreleased, and that neither the Morrow
Brothers nor the mortgagee had been made parties to the
proceedings; *secondly*, "that sometime in the year 1906 said
Morrow Brothers built a large warehouse on their property
and established a party wall on their easternmost line with
the property in question in this suit, but said party wall was

only established to the heighth of the plaintiffs' several walls adjoining, which are much lower than the walls of the said Morrow Brothers' new building, but said new wall was carried up much higher upon the same foundation lines as the said party wall of the Morrow Brothers' property, and about twenty windows have been opened therein overlooking the roofs and property mentioned in these proceedings, which was a trespass upon the rights of the plaintiffs as to the use of the above portion of said will on the land of the plaintiffs; and an ejectment by the plaintiffs against Morrow Brothers might be necessary to settle the rights of the parties in the proper use of said wall above the roofs of the plaintiffs, whereby should the plaintiffs, or any purchaser from them desire to build up this property, it would be necessary to close up said windows, and also to build an entire new wall adjoining the said party wall to carry said upper wall as the plaintiffs in the absence of an agreement to the contrary may have *no* right to use said party wall above the present roofs of their property, and which would be a great depreciation to the property of the plaintiffs, or of any purchaser from them, or involve them in a law suit."

The petition further charged that the petitioner had had a verbal understanding and arrangement as to the settlement of the disputed lines and as to the use of the party wall above the vendors' property, but that the arrangement had not been reduced to writing; that neither the mortgagee nor the wives of the Morrow Brothers were parties to this arrangement.

Because of the facts stated it was alleged that the title to the property contracted to be sold was seriously affected, and that the petitioner objected to accepting such title as the vendors were able to give.

Upon this petition the Court passed an order making Mr. Stewart a party defendant, and requiring him to answer the bill, and further ordered that the Morrow Brothers and the Fidelity Trust Company, mortgagee, show cause why they

should not be made parties and required to answer the bill. The answer of Mr. Stewart, filed April 3, 1914, admitted the contract set up in the bill and alleged that the vendors were unable to convey a good and merchantable title to the property, and for that reason the sale should not be ratified by the Court. The Morrow Brothers and the Fidelity Trust Company filed answers to the petition in which they showed cause why they should not be made parties. They were not made parties to the cause, and no further action with respect to them was taken. These anwsers were filed April 6th, 1914, and the papers were referred to an examiner to take testimony, and the first testimony was taken April 29, 1914. Great delay is shown in taking the evidence, and the depositions were not filed in Court until October 21, 1914, a period of more than six months after the first meeting before the examiner.

The decree of December 2, 1914, as heretofore stated, ratified and confirmed the contract, and appointed Joseph C. Lautner, trustee, to convey the property to the purchaser upon the payment by him of the balance of the purchase money, to wit, $13,000. It was also decreed that Mr. Stewart should pay interest on said balance from the date of the decree, and assume all taxes and water rent from that date. It further provided that the costs of the proceeding be paid out of the estate, except the costs arising on the petition and answer of the purchaser and the testimony taken in connection therewith, which latter costs Mr. Stewart was adjudged to pay. This decree was modified by decree of December 19, 1914, in respect to the costs so as to make the costs of the certified copies of deeds filed by Hyland P. Stewart with the examiner payable out of the estate. Both parties have appealed—Mr. Stewart from both decrees, and the appellees from that part of the decree of December 2, 1914, which deals with the allowance of interest.

The record shows that on September 26, 1913—the day on which the contract was executed—Mr. Stewart wrote Mr. Lautner, the agent for the vendors, as follows:

"Dear Sir—In signing the contract with you this day, for the sale of property 214 West Saratoga street, I am informed of the contract made between Barbara Kreuzer, the life tenant, owner of said property, and Morrow Brothers, affecting the wall on the west of said property, and agree that I will make no point of this contract *in the sale* of the property to me. It being, however, understood that I am not bound by the contents of this contract so far as it affects any rights I might acquire from you as agent for the remaindermen in fee, in said wall, *but I especially agree not to object to your or their title or the title to be effected by the sale in the Circuit Court, because of the existence of such contract,* it being understood that the remaindermen in fee are entirely in ignorance of said contract about the wall and never ratified or knew of said contract.

"I further understand that the paper title to your property shows a front on Saratoga street of fifteen feet nine inches, but that you have in actual possession and have so held for over thirty years nineteen feet more or less to the present centre of the partition wall on the west. *If this possession has been continuous and uninterrupted for over thirty years I agree not to dispute the title on this account.*

"Yours very truly,

"Hyland P. Stewart."

The uncontradicted evidence in the record shows that Barbara Kreuzer, the life tenant, has been in the continuous, uninterrupted and adverse possession of the property sold, for more than thirty years; that Christopher Kreuzer took possession of the identical property in 1874 and remained in the exclusive and undisturbed possession thereof until his death in 1878, and that since then it has been in the possession and occupancy of his widow and children, and the devisees under his will. As to the very small strip of ground not included within the description contained in the deed of

1874 from Hiram Woods et al. to Christopher Kreuzer it would be difficult to find more complete and satisfactory evidence than that contained in this record of title by adversary possession.

Mr. Lautner, who was well acquainted with the property and who had lived in the house and whose testimony is uncontradicted, was shown the deed of 1874 and testified: "The description of this deed calls for a front of fifteen feet and nine inches and a depth of one hundred and five feet. The lot is larger, however, having a front of about nineteen feet five inches with irregular lines following party walls to the full depth of one hundred feet. The property is in fee simple. * * * I know this deed called for fifteen feet nine inches with a depth of one hundred and five feet, but the lot which he went into possession of in 1874 when purchased was exactly as it is today as enclosed by the walls and fences and is of irregular shape. * * * He went into the possession of the same in 1874, on receipt of his deed, and up to his death lived in the house which occupied practically the whole lot as shown on the plat. After his death, his widow lived there up to some years ago, and she has rented it ever since, and collected the rent for the same, and the lines have always been the same for the whole time."

Asked what had been the character of this possession for the past thirty-nine years to his knowledge the witness said: "To my knowledge, it has been adverse, absolute and exclusive to all the world without any recognition of any right or claims of any persons whatever, and has been enclosed as is now by the occupancy of the house on the entire lot with the exception of a small yard on the east side, which is and always has been enclosed by a fence as shown on the survey." The testimony contained in the record fully gratifies the requirements of law as to adversary title to the few feet of ground involved in this controversy, and when such possession is shown the appellant cannot object to the sale upon the mere ground that the title to this small strip rests upon adversary possession, and in this case the purchaser ex-

pressly agreed not to dispute the title on that ground. The record we think discloses no defect of title.

As to the agreement of February 8, 1906, and referred to in the letter of Mr. Stewart, between Barbara Kreuzer, the life tenant, and the Morrow Brothers, relating to the construction of a new wall on the west side of the property, it is sufficient to say that the purchaser was aware of this agreement at the time the contract of purchase was made, and that he agreed, as shown by his letter of September 26, 1913, not to object to the title upon that ground.

In *Stewart* v. *Devries,* 81 Md. 525, the purchaser excepted to the ratification of a trustee's sale and relied upon an alleged defect, of which he had knowledge at the time he made his bid, in the title of the property. Speaking of this objection, the Court said: "As the appellant had ample notice of what the trustee was selling and as he purchased the property with full knowledge of the defect alleged in the title, it cannot be said that he was in any way misled by the trustee, or that any injustice will be done in requiring him to take the property in the condition he knew it to be in when he made his bid." See also *O'Sullivan* v. *Buckner,* 107 Md. 33.

The test of jurisdiction in the Court is to be found in the determination of the question whether a demurrer would lie to the bill. Tested by this principle the bill is free from objection. It was insisted that the bill is defective because of the omission of necessary parties; that the record shows that the paper title to the small strip of land in question is outstanding in the heirs of Daniel Chase, who owned the property about 1870, and that because they, the Morrow Brothers, and the Fidelity Trust Company, mortgagee, are not made parties, a good and merchantible title cannot be conveyed, and for this reason the sale should not be ratified. We do not agree to this contention. The law does not require an owner to make persons parties who by some remote possibility might have claims against the property, and in this way discredit his own title. If the proof shows the title to be free

from reasonable doubt this is sufficient. The cases are numerous in this Court in which parties have been required to take property the title to which rested in adversary possession and in which possible claimants were not parties to the cause. We think it clearly established by the case of *Herbold* v. *Montebello Association,* 113 Md. 156, that such possession as is shown in this case is sufficient to establish a legal and marketable title to the property purchased. JUDGE SCHMUCKER said in that case, that: "It has frequently been held by this Court that in cases like the present, which are in *personam* and not in *rem,* the Court does not undertake to pronounce with certainty that the title is either good or bad, but whether it is free from reasonable doubt. A mere threat or possibility of a contest will not be sufficient to induce the Court to refuse to grant specific performance. The doubt must be a rational one and such as would induce a prudent man to hesitate about taking the title. *Gill* v. *Wells,* 59 Md. 492; *Herzberg* v. *Warfield,* 76 Md. 449; *Bay* v. *Posner,* 78 Md. 42; *Chew* v. *Tome,* 93 Md. 244; *Erdman* v. *Corse,* 87 Md. 506; *Rother* v. *Sharp St. Station,* 85 Md. 528.

As to the vendors' appeal from that portion of the decree relating to the allowance of interest. The Court, it appears, was controlled by the terms of the contract, which provided that the balance of purchase money should not become due until the ratification of the sale. While, as we have said, there appears to have been unnecessary delay in the conduct of the case and in bringing it to final hearing, this delay is not shown to be attributable solely to the purchaser. We are of opinion that the allowance of interest and the disposition of costs made by the decrees were proper, and finding no error in the conclusion reached by the Court below, the decrees will be affirmed.

*Decrees affirmed, the appellant, Hyland P.*
*Stewart, to pay the costs in this Court.*