## CARROLL F. FITZSIMMONS v. SOUTH REALTY CORPORATION.

### [No. 101, October Term, 1931.]

*Decided March 2nd, 1932.*

The cause was submitted on briefs to Bond, C. J., Patti-son, Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*Michael F. Delea,* for the appellant.

*Coady & Farley,* for the appellee.

Pattison, J., delivered the opinion of the Court.

The appellee, the South Realty Corporation, by written agreement, or contract of sale, sold a lot or parcel of ground situated in Baltimore County, Maryland, in fee simple unto the appellant, Carroll F. Fitzsimmons, at and for the sum

of $7,000, of which amount $500 was paid in cash at the time of the execution of the contract, and the balance was to be paid within thirty days thereafter. It appears that the lot so sold was acquired by the appellee by deed of conveyance from the A. J. Watkins Realty Corporation, and that the corporation last named had acquired it by deed of conveyance from one Clara Bell, who had acquired it by deed of conveyance from Henry C. Kaufman.

The deferred payment was not made at the time it became due and owing, and, as a result thereof, the South Realty Corporation filed its bill of complaint alleging the sale as stated, Fitzsimmons' refusal to pay the deferred payment of purchase money, and its readiness and willingness to convey the property upon the payment of the balance of the purchase money. The bill concluded by asking for the specific performance of the contract of sale.

The defendant filed his answer admitting the execution of the contract of sale and his refusal to pay the deferred payment of purchase money. He gave as a reason for his refusal to pay the same that the South Realty Corporation did not have a marketable fee simple title in said property, because of the following restrictions and limitations found in the afore-mentioned deeds (from Henry C. Kaufman to Clara Bell, and from Clara Bell to the A. J. Watkins Realty Corporation) :

"First: That at no time shall any part of the said land be used or occupied for the manufacture, brewing, distilling or sale of spirituous or malt liquors, nor shall the said lot or any part thereof or any building erected thereon at any time hereafter be used or occupied as a tavern, drinking saloon, bone boiling establishment, tannery, slaughter house, glue, soap, candle, starch or gunpowder manufactory, nor for other offensive or dangerous purposes, nor for the keeping of pigs or other animals of like offensive character, nor shall any signs for advertising purposes be erected or placed thereon.

"Second: No barn, stable, crops, garage or other outbuilding shall be erected nearer to Leeds Avenue on

which said lot has two fronts, than one hundred feet, nor be less than ten feet in any dimensions.

"Third: That no building, excepting outbuildings, shall be erected, upon said lot which shall cost less than twenty-five hundred dollars and that no part of any building erected upon said lot including porch, veranda, bay windows and all projections shall be at least twenty-five feet away from Leeds Avenue, and that the main front of any main building erected upon said lot shall face the sixty-eight feet two inches line of said lot and shall be parallel thereto as nearly as architecturally proper and possible."

In the deed from A. J. Watkins Realty Corporation to the South Realty Corporation, these restrictions and limitations are omitted.

The plat found in the record, made by Henry C. Kaufman, the developer, in July, 1915, and filed for record among the land records of Baltimore County on September 17th, 1919, consisted of two parcels of land lying and being on the westward side of Leeds Street. The first of these was acquired by Henry C. Kaufman and Annie S. Kaufman, his wife, as tenants by the entireties from the Leeds Land & Improvement Company by deed dated June 25th, 1896. The second parcel was acquired by Henry C. Kaufman from L. Frank Gerber and wife, by deed dated November 2nd, 1908. The parcel held by Kaufman and wife was divided into six lots, five of which were designated as A, B, C, D, and E. The sixth lot, which adjoined the second parcel of land, had no designation. On January 29th, 1913, Annie S. Kaufman, the wife, died, at which time Henry C. Kaufman, the husband, became the owner in fee simple of said lot or parcel of land. At this time he was likewise the owner in fee of the second parcel acquired by him in 1908 from Gerber and wife. This parcel of land was divided into twenty-two lots numbering one to twenty-two, inclusive. On December 1st, 1916, he sold and conveyed the lot in question, which was lot No. 1 on the plat, unto Clara Bell, the wording of the grant being "unto Clara Bell, her heirs and assigns, in fee simple,

forever, subject however, to the restrictions, conditions and limitations hereinafter mentioned," which restrictions, conditions and limitations have hereinbefore been set out in full. In 1919, he conveyed to different purchasers the entire lot formerly held by him and his wife, adjacent to lot No. 1, the lot here in question, the conveyances therefor containing no restrictions or limitations whatever.

After the sale of lot No. 1, some of the remaining lots were sold, others were leased, and others remained unsold at the death of Kaufman. Some of those sold or leased contained the restrictions named, some restrictions differing from those mentioned, and others no restrictions or limitations whatever. For instance, lot No. 3, separated from lot No. 1 by lot No. 2, having only a frontage of fifty feet, was sold without restrictions.

Henry C. Kaufman died on February 12th, 1921, leaving a last will and testament by which he devised and bequeathed all his title or interest remaining in him in the lands mentioned to Harry J. Kaufman and Walter C. Kaufman, trustees, in whom were vested full power of sale. Thereafter, the said trustees conveyed unto those to whom the lots had been leased for the term of ninety-nine years, renewable forever, a fee simple title, inserting in the deed of conveyance certain restrictions and limitations, in most instances varying from the restrictions and limitations contained in the deed in question. This was done whether the lease did or did not contain restrictions or limitations.

In the stipulation or agreed statement of facts found in the record, it is conceded that in none of the deeds or leases for the lots mentioned was found any "wording binding the heirs, assigns, or successors of the grantors, grantees, lessors or lessees, as to said 'covenants, conditions, restrictions, and limitations,'" nor did they contain any provision to the effect that the restrictions and limitations were placed therein for the benefit of the remaining lots of the same group, or that said lots were to be conveyed subject to said restrictions and limitations.

The learned chancellor, after considering the evidence offered in the case and the stipulation filed by the parties, held that such restrictions and limitations were not enforceable, and in consequence thereof, a marketable and fee simple title could be conveyed by the appellee to the appellant in the property mentioned and described in the contract of sale. It is from that decree that the appeal in this case was taken.

It is contended by the appellee that the restrictions and limitations contained in the conveyance from Kaufman to Clara Bell, or in the succeeding deed, where the property is conveyed subject to such restrictions or limitations, are not enforceable, as it appears:

"(a) That no words binding heirs, successors, or assigns of the respective parties to the deeds and leases were used by the developer in conveying the lots.

"(b) That the developer has departed this life.

"(c) That the developer did not covenant in the deed of the lot involved in this case, which was the first he conveyed, that he would convey the other lots subject to similar restrictions.

"(d) That the plat of the development was not recorded until almost three years after the recording of the deed of the lot in question.

"(e) That out of the twenty-eight (28) lots which comprise the development at least eleven (11) were conveyed without any restrictions and of these the developer conveyed seventeen (17), ten (10) without restrictions, and his testamentary trustees, the others, one (1) at least, without restrictions.

"(f) That the restrictions in the deed of the lot involved, which was the first sold, vary materially from those in the deeds of all the other lots as to use, set back of dwelling, and minimum cost of the dwelling to be erected."

As was said in *Korn v. Campbell*, 192 N. Y. 490, 85 N. E. 687, 689: "There has been much judicial writing upon the subject of restrictive covenants, and, as may be anticipated

from the very nature of the topic, the cases abound in fine and subtle distinctions, which have been invented either to overcome the rigor of the common law in courts of equitable cognizance, or to adapt the settled forms of relief to fit special cases." It may be said, however, that a person owning a body of land, and selling a portion thereof, may, for the benefit of his remaining land, impose upon the lands granted restrictions not against public policy, and a court of equity will generally enforce them, 7 *R. C. L.* 30. These restrictions or limitations may be created by reservation in the deed, by a condition annexed to the grant, by a covenant, and by some authorities it is held that they may be created by a parol agreement of the grantees. In the creation of the restriction, it is important that it should be clearly defined and understood by the parties.

A difficulty with which the courts are frequently confronted is the extent or duration of the reservations or restrictions, that is, whether they are personal and binding only upon the parties thereto, or whether they extend to their heirs and assigns. This question, unless expressly stated in the agreement or conveyance itself, like the further question whether the restrictions or reservations are made for the benefit of the remaining lands of the grantor, depends upon the intentions of the parties, which are to be ascertained from the facts in each particular case. To avoid the difficulty of uncertainty as to the meaning of the parties, it is decidedly better that the restriction should not only be clear and certain in its terms, but it should contain a promise, agreement, or undertaking on the grantee's part; or it should contain such terms as have a certain legal operation from which a covenant would necessarily arise. 18 *Corpus Juris* 445.

The restriction or limitation in this case is found in the granting clause, where it is said: "Unto Clara Bell, her heirs and assigns, in fee simple, forever, subject, however, to the restrictions, conditions and limitations hereinafter mentioned." There is no express covenant in the deed on the part of the grantee, binding herself, her heirs, and assigns to

comply with such restrictions and limtations, nor is there
any covenant on the part of the grantor that such restrictions
and limitations are made for the benefit of his remaining
land, or that, when sold or disposed of, the restrictions and
limitations will be inserted in the deeds of conveyance.  In
order that these restrictions or reservations be binding upon
the heirs and assigns of the grantor and grantee, evidence
must be found outside of the conveyance giving to them that
effect.

In *Wood v. Stehrer,* 119 Md. 143, 86 A. 128, 130, Chief
Judge Boyd, speaking for this court, said: "If it (the reser-
vation or restriction) was intended to attach to the land re-
maining in the grantors the restrictions, conditions, and limi-
tations imposed on the lot conveyed to appellant, surely it
would have been so stated; but they only covenanted that
'they will not grant, convey, assign, or lease any of the
ground,' etc., except under and subject to the aforesaid re-
strictions, etc.  As the covenant does not attempt to regulate
the use of the remaining property by the grantors, and does
not bind or refer to their heirs and assigns, it is not to be
presumed that it was intended to include them. * * * There
are a number of cases in this state which determine that, if
it is intended to bind heirs and assigns by such restrictions,
it must be so stated, or at least there must be enough in the
instrument to show that such was the intention (*Halle v.
Newbold, supra,* [69 Md. 265, 14 A. 662] ; *Ross v. McGee,*
98 Md. 389, 56 A. 1128; *Dawson v. Western Maryland R.
Co., supra* [107 Md. 70, 68 A. 301] ;. *Maryland & Pa. R. Co.
v. Silver,* 110 Md. 510, 73 A. 297) ; and in a covenant such
as this, where they were apparently deliberately omitted, we
cannot enlarge the covenant by reading them into it.  As was
said in *Kent v. Bird,* L. R. 5 Ch. Div. 974: 'Persons who
are men of business as they are here are able to get protection
and advice, and they must make their covenants express so
as to state what they really mean, and they cannot get a
court of law or equity to supply something which they have
not stipulated for in order to get a benefit which is supposed
to have been intended.' If it was so intended, it would have

been easy to have so framed the covenant that the restrictions would have attached to the remaining lands of the grantors, or to have covenanted for their heirs and assigns, as the grantee did in the covenant he entered into." See *Lowes v. Carter,* 124 Md. 683, 93 A. 216.

The grant to Clara Bell, which was to "her heirs and assigns forever," was only expressive of the extent of the estate that was being granted to her. There was, as we have said, no covenant on the part of the grantee, for herself, her heirs and assigns, that they would comply with the restrictions and reservations contained in the deed. Nor did the deed contain anything whatever to the effect that the restrictions or limitations were made for the benefit of the grantor's remaining land, or that such land would only be sold and conveyed subject to such reservations and restrictions. There is nothing in this case showing that the restrictions and limitations contained in the grant to Clara Bell were for the protection of the grantor's remaining land. He subsequently sold a part of this land lying immediately adjacent to it on the south to different persons without any restrictions or limitations whatever. Not only was this true, but he also sold a number of lots to the north of it, one situated within fifty feet of it, without any restrictions or limitations whatever. These facts do not indicate that the restrictions and limitations were inserted in the deed for the benefit of the remaining land, or, if so, the subsequent conveyance of other lots indicated that such purpose had been abandoned. The restrictions and limitations, in our opinion, cannot be enforced by any of the owners of these lands purchased from Kaufman, or by the trustees holding the unsold portions thereof.

The learned chancellor below was right, we think, in decreeing a specific performance of the contract, and the decree so passed by him will be affirmed.

*Decree affirmed, with costs.*