## SCHLOSSER *v.* CREAMER ET UX.

[No. 128, September Term, 1971.]

*Decided December 8, 1971.*

584

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SINGLEY and SMITH, JJ.

*Carl A. Muly* and *I. Winston Mezger*, with whom were *Mezger & Mezger* on the brief, for appellant.

*Hyman B. Rubenstein*, with whom was *Julius R. Forman* on the brief, for appellees.

SMITH, J., delivered the opinion of the Court.

We are here concerned with whether appellant, Henry W. Schlosser, Sr. (Schlosser), held title in land in Baltimore County sufficiently without doubt as to merchantability to justify his suit for damages against appellees, John J. Creamer and Frances E. Creamer, his wife, (the Creamers). On the basis of an alleged title defect they had declined to proceed under a contract to purchase. We shall reverse the judgment for costs entered in the Creamers' favor by the trial judge who heard the case without a jury.

Schlosser contracted to sell to the Creamers a home at 1 Woodlawn Avenue in Catonsville. The provisions in the contract relative to title were:

> "Title to be good and merchantable, free of liens and encumbrances except as specified herein and except: Use and occupancy restrictions of public record which are generally ap-

plicable to properties in the immediate neighborhood or the sub-division in which the property is located, and publicly recorded easements for public utilities and any other easements which may be observed by an inspection of the property."

The land in question is a corner lot situate at the northeast corner of Woodlawn Avenue and Frederick Road. On the theory that a picture is worth a thousand words, copy of the location survey is attached to this opinion which the reporter is directed to reproduce.

The deed to Schlosser in 1925, in addition to restrictions against saloons and the keeping of swine and specifications as to the distance from any street for the erection of any stable, contained a restriction which stated:

"That no residence or dwelling shall be erected on the lot hereby conveyed within seventy five feet of the lines of the streets and avenues designated on said plat."

Counsel for the Creamers advised Schlosser the title was not marketable "because of restrictions contained in [his] deed," pointing to the fact, "[a]mong other things," that there was a "violation of the restrictions which state in part that no dwelling shall be erected on the property within 75 feet of the lines of the streets and avenues on the plat," stating that "a recent survey [showed] the dwelling is only 44 feet from Woodlawn Avenue and only 28 feet from Frederick Road." This letter was said to have been based upon the report of a title insurance company to the bank to which the Creamers proposed to mortgage the property. That company proposed placing an exception in its policy stating:

"Subject to a violation of restrictions which states in part that no dwelling shall be erected on the property within 75 feet of the lines of the streets and avenues designated on said plat, whereas, according to survey dated May 1, 1967

prepared by General Surveying Company, the dwelling is only 44 feet from the street line. This policy specifically guarantees that the dwelling can remain as located, however the policy will not guarantee or insure the marketability of the subject property."

Counsel for Schlosser replied prior to the settlement date set in the contract:

"After a thorough investigation, we find that the title to the property is good and merchantable and there are two different title companies which are willing to issue their certificate insuring title to the property. The restrictions contained in the original Deed were placed there before the streets were widened and for this reason, along with other information disclosed as a result of our investigation, the restrictions are no longer valid and binding."

He then went on to state that suit would be entered against the Creamers for Schlosser's damages if settlement were not made in accordance with the contract. Settlement was not made nor, apparently, did the attorney receive any reply to that letter. No inquiry was made as to what title companies might have been willing to insure title to the land. An officer of one title company testified in the circuit court that his company would have been willing to insure the title.

A building line is not shown on the original subdivision plat which was made and recorded in 1892. Lots were measured from the center of Woodlawn Avenue which has since been widened. It will be noted that a porch on the Schlosser home is 44 feet from the presently existing Woodlawn Avenue and 66 feet from the center of Woodlawn Avenue, extending 11 feet beyond the dwelling, making the dwelling itself 55 feet from Woodlawn Avenue. We interpret the survey as showing the distance from Frederick Road to be 28 feet.

It was established that the Schlosser home was built prior to 1930. Schlosser's daughter Ruth testified that she was 51 years old at the time of the trial in 1971 and that she was about 3 years old when her parents moved to that home. It was further established that the house had not been moved since it was built. Changes had been made, however, in Woodlawn Avenue and Frederick Road.

A survey was introduced showing that the four homes nearest to the Schlosser home in the same block and on the same side of Woodlawn Avenue as the Schlosser home were set back from Woodlawn Avenue as now laid down 44.8, 44.4, 45.4, and 39.5 feet, respectively, thus placing them in apparent violation of the restrictions set forth in their deeds.

The corporate developer and grantor in the deed to Schlosser is said to be out of existence. We were advised at argument that no assignment had been made of the rights of that company arising from the restrictions in the various deeds.

It appears that the restrictions in the various deeds in the subdivision were not uniform as to setback lines. The restrictions are silent as to the length of time the land was to be bound by them. Schlosser and his wife (now deceased), the grantees, did not bind themselves to use similar restrictions in any subsequent deed, nor was there an agreement on the part of the grantor in the deed that similar restrictions would be placed in other deeds relative to the development. For the purposes of this opinion we assume, without deciding, that the restrictions at the time they were made could have been enforced by a neighboring property owner and by the original grantor. *Cf. Summers v. Beeler*, 90 Md. 474, 45 A. 19 (1899) ; *Ringgold v. Denhardt*, 136 Md. 136, 110 A. 321 (1920) ; and *Chevy Chase Village v. Jaggers*, 261 Md. 309, 275 A. 2d 167 (1971).

Evidence was presented relative to the damage said to have been suffered by Schlosser when he ultimately

sold the property. No finding on this subject was made by the trial judge, however, since he determined the Creamers had no liability for the damage.

Whether the suit be one for specific performance or one by a purchaser to recover a down payment made on real estate, or whether the point at issue be an exception to a judicial sale based upon the title to be conveyed, the test is the same, whether a marketable title can be conveyed. *Wm. H. McCeney, Inc. v. Thibadeau,* 215 Md. 77, 137 A. 2d 206 (1957) ; *Zulver Realty Co. v. Snyder,* 191 Md. 374, 62 A. 2d 276 (1948) ; and *New Freedom Corp. v. Brown,* 260 Md. 383, 272 A. 2d 401 (1971). It follows, therefore, that the same test should be applied in determining whether a purchaser who reneged on his contract to buy real estate is liable to the seller for damages.

Our most recent pronouncement on the subject of marketable title is found in *New Freedom* where Chief Judge Hammond at page 389 said for the Court, "A title to be marketable need not be flawless." He then went on to describe the test as "well enunciated" in *Zulver Realty Co. v. Snyder, supra.* There the Court said:

> "A marketable title is a title free from encumbrances and any reasonable doubt as to its validity. No specific rule can be laid down as to what doubts will be sufficient to make a title unmarketable. The general rule is that the purchaser is entitled to a deed which will enable him to hold the land in peace and, if he wishes to sell it, to be reasonably certain that no flaw will appear to disturb its market value. However, a title, in order to be marketable, need not be free from every conceivable technical criticism. It is not every possibility of defect or even threat of suit that will be sufficient to make a title unmarketable. Objections based on frivolous and captious niceties are not sufficient. In other words, a marketable title is one which a

reasonable purchaser, who is well informed as to the facts and their legal bearings, and ready and willing to perform his contract, would be willing to accept in the exercise of that prudence which business men ordinarily use in such transactions." *Id.* at 384.

While cases are legion in which no reasonable doubt as to marketability has been found, the number of cases are few in which such reasonable doubt as would excuse a purchaser from taking title has been found. The latter include *Wm. H. McCeney, Inc. v. Thibadeau, supra,* (contract in 1954, title based on patent from the State in 1956 with testimony of an attorney that he had been unable to find any claim of title to the premises, that the property "appears to be lost property") ; *Berlin v. Caplan,* 211 Md. 333, 127 A. 2d 512 (1956), (wrong property described in deed and insufficient evidence of adverse possession) ; *Zepp v. Darnall,* 191 Md. 68, 59 A. 2d 774 (1948), (serious defect in description and testimony of surveyors that improvements were not located on land intended to be conveyed) ; and *Housing Eng. Co. v. Andrew Co.,* 184 Md. 290, 40 A. 2d 368 (1945), (easement for pipelines across the land to be conveyed and right to use a railroad siding located on it, both of which would interfere with the intended use by the purchaser).

In *Goen v. Sansbury,* 219 Md. 289, 295, 149 A. 2d 17 (1959), Judge (now Chief Judge) Hammond set forth for the Court the criteria for establishing adverse possession, namely that "a claimant must show that the possession was actual, open, notorious, exclusive and continuous or uninterrupted for the statutory period of twenty years." In *Clarke v. Lacy,* 213 Md. 482, 132 A. 2d 478 (1957), this Court, in another opinion by Judge Hammond, rejected a contention that a title held by adverse possession required perfecting, observing at page 490, "Since 1892, at least, Maryland has granted specific performance of contracts for sale of land, title to which was held by adverse possession, and has consid-

ered such titles to be good." In *Taussig v. Van Deusen,*
183 Md. 436, 37 A. 2d 915 (1944), in a case dealing with
adverse possession, the Court was met with the conten-
tion that all persons possibly concerned were not parties
to the proceeding. The decree awarding specific perfor-
mance was affirmed, nevertheless, with Judge Collins
saying for the Court:

> "Persons who have a possible interest in real
> estate are proper, though not necessary, parties
> to a suit by those claiming adversely to them
> against those to whom they have contracted to
> sell the property, to determine the validity of
> the vendors' title. [Citing authorities.] As be-
> tween vendors and vendees, in cases of specific
> performance of real estate, as a general and al-
> most universal rule, the Court is bound ' "to as-
> certain and determine, as best it may, what the
> law is, and to take that to be the law which it
> has so ascertained and determined." ' [Citing
> authorities.] The possibility that the Court
> may, at some time in the future, when other
> parties are before it, disregard its own prece-
> dent, and decide the same question, depending
> on the same facts or different facts, in a dif-
> ferent way is so remote that it should not
> be permitted to arrest the development and
> interfere with the salability of land, possibly for
> a long period of time. [Citing authorities.]" *Id.*
> at 441-42.

*See also Arcadia Invest. Corp. v. C. C. & S. Co.,* 190 Md.
106, 57 A. 2d 285 (1948). Other cases in which specific
performance has been decreed where title was based up-
on adverse possession include *Stewart v. Kreuzer,* 127
Md. 1, 95 A. 1052 (1915), and *Herbold v. Montebello
Ass'n,* 113 Md. 156, 77 A. 122 (1910).

Legal title by adverse possession in platted streets has
been found and specific performance decreed in *Schlue-
ter v. Ackerman,* 215 Md. 173, 137 A. 2d 179 (1957);

*Arcadia Invest. Corp. v. C. C. & S. Co., supra; Taussig v. Van Deusen, supra; Title, Incorporated v. Dubel,* 177 Md. 387, 9 A. 2d 591 (1939) ; *Finance Corp. v. Realty Corp.,* 172 Md. 138, 191 A. 81 (1937) ; and *Finance Corp. v. Realty Corp.,* 172 Md. 150, 191 A. 87 (1937).

In *Zulver Realty Co. v. Snyder, supra,* the objection was made to the title that when the deed was signed by the grantors the grantee had not yet been incorporated. Specific performance was nevertheless decreed, since it was established that the corporation was incorporated prior to the recordation of the deed.

In *Sinclair v. Weber,* 204 Md. 324, 104 A. 2d 561 (1954), the objection was offered that the west wall of a building encroached from five to thirteen inches beyond the building line of Greenmount Avenue in Baltimore City. Testimony showed that the building had been standing on the same spot for about 100 years "and that the encroachment [was] so slight as to be scarcely noticeable." The Court held that the encroachment did not render the title to the property unmarketable.

In *Oak Lane Corporation v. Duke,* 196 Md. 136, 75 A. 2d 80 (1950), the purchaser desired to construct apartment units and contended that it could not do this because of restrictions in the deed, "particularly those with respect to the building lines and the construction of only one house to a fifty-foot frontage." Chief Judge Marbury there said for the Court:

> "In the nearly 50 years that have since elapsed, there have been a number of violations of these restrictions by subsequent owners of the lots. The Telephone Company has built a building embracing four lots, and residential row houses have been built. These constructions were contrary to the provision that only one house should be erected on a fifty-foot frontage. Of course, a few instances may merely indicate toleration rather' than a surrender or abandonment of rights. *Schlicht v. Wengert,* 178 Md.

629, 15 A. 2d 911. However, in view of the unilateral nature of the restrictions, and the subsequent disregard of them by later purchasers without any objection from other lot owners, we conclude that restrictions as originally placed upon the property, and as practically construed, were personal covenants, did not run with the land, and, therefore, are no longer binding upon the lots with which we are here concerned. *Ringgold v. Denhardt,* 136 Md. 136, 146, 110 A. 321." *Id.* at 139-40.

The chancellor was held to have properly decreed specific performance. Other cases in which restrictive covenants have been held no longer applicable and specific performance has been decreed include *Needle v. Clifton Realty Corp.,* 195 Md. 553, 73 A. 2d 895 (1950) ; *Gulf Oil Corp. v. Levy,* 181 Md. 488, 30 A. 2d 740 (1943) ; *Whitmarsh v. Richmond,* 179 Md. 523, 20 A. 2d 161 (1941) ; and *Fitzsimmons v. Realty Corp.,* 162 Md. 108, 159 A. 111 (1932).

If there is one lesson which runs through the cases heretofore considered by this Court in determining whether title in a given instance is marketable, it certainly must be that the mere fact that someone challenges that marketability because of a supposed defect is not sufficient to render the title unmarketable. In today's world there is no shortage of individuals willing to litigate on virtually any subject without regard to the soundness of the propositions advanced and, therefore, without regard to the probability of success. In our affluent society some are blessed with sufficient worldly goods to finance such litigation. Others litigate at the expense of the public treasury, as witness the vast number of unreported opinions of our Court of Special Appeals in criminal cases where the contentions are completely without merit. Equally without merit are some of the civil matters reaching this Court. It no doubt was a recognition of human contentiousness that led the courts

to speak of reasonable doubt as to marketability and not just as to the possibility of litigation.

In this case we have a man in continuous possession of land from the time he bought it in 1925. The house in question has been in its same location from the time it was then built. There had been no litigation relative to the setback lines. To construct a dwelling on that lot and set it back 75 feet from Frederick Avenue would have been virtually impossible. The four homes nearest to it on Woodlawn Avenue varied in distance from 39.5 to 45.4 feet from the curb line of that street in comparison with the 44 feet of Schlosser's porch or 55 feet from the house itself. For the purposes of this case we are not obliged to make a determination as to whether the porch came within the term "residence or dwelling" as set forth in the restriction. We conclude that other property owners in the area would be barred from enforcement of the covenants by the running of the prescriptive period as well as by acquiescence in the violations of the restriction. *Mauck v. Bailey*, 247 Md. 434, 446, 231 A. 2d 685 (1967). As was said in *Herbold v. Montebello Ass'n, supra:*

> "[T]he Court does not undertake to pronounce with certainty that the title is either good or bad but whether it is free from reasonable doubt. A mere threat or a possibility of a contest will not be sufficient to induce the Court to refuse to grant specific performance. The doubt must be a rational one and such as would induce a prudent man to hesitate about taking the title." (Citing authorities.) *Id.* at 162.

We conclude in this instance that "a reasonable purchaser, who is well informed as to the facts and their legal bearings, and ready and willing to perform the contract, would be willing to accept [this title] in the exercise of that prudence which business men ordinarily use in such transactions."

Since there has been no determination of the damages

594

actually sustained by Schlosser, damages will be determined upon the remand.

*Judgment reversed; judgment entered in favor of appellant against appellees as to liability; case remanded for determination of damages; appellees to pay the costs.*

I hereby certify that I have made a
survey of this lot for the purpose
of locating the improvements thereon
and that they are located as shown.

*Edward J. Kress*

REG. NO. 3384

Note:
  Being part of the land shown on the Plat of
Eden Terrace which Plat is recorded among the Land
Records of Balto Co. in Plat Book J.V.S. No. 1
folio 82