THOMAS N. JEFFERSON *v.* LAWRENCE V. JONES

[No. 28, September Term, 1979.]

*Decided December 14, 1979.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ.

*David N. Grimes,* with whom were *Bullard & Deutchman, P.A.* on the brief, for appellant.

No brief filed on behalf of appellee.

DIGGES, J., delivered the opinion of the Court.

In the present case, we are called upon to decide an issue arising under the Maryland Uniform Commercial Code that this Court has not before had occasion to consider — whether a purchaser of goods must prove that a third party has a superior or paramount title to those goods in order to substantiate a claim that a seller's warranty of title as established by section 2-312 of the Commercial Law Article, Md. Code (1975), has been breached?

The genesis of this dispute was the sale of a Honda motorcycle by appellee Lawrence V. Jones to appellant Thomas N. Jefferson in July, 1975. At the time of sale, although the appellant received immediate possession of the cycle, the seller retained the title certificate as security for the unpaid portion of the agreed purchase price. Upon the receipt of the balance due, Jones executed an assignment of the certificate to Jefferson, which was then reissued in the

new owner's name by the Maryland Motor Vehicle Administration. Approximately two years later, while Jefferson was having the motorcycle repaired at a garage in the District of Columbia, he was asked by the D. C. police, for reasons not apparent in the record, to prove his entitlement to the vehicle. In an effort to establish his ownership, Jefferson produced his title certificate, but when the identification number listed on it (CB450E1009012) did not correspond to the one embossed on the frame of the vehicle (CB4501010009), the police became suspicious and seized the motorcycle. Following the denial of his demand that possession of the motorcycle be relinquished to him, Jefferson instituted an action in the Superior Court of the District of Columbia against the police in replevin and for conversion. Before trial, the matter was settled and the motorcycle was returned to Jefferson. He then asked Jones to indemnify him for the legal expenses which he had incurred in retrieving the vehicle, and when Jones refused, the appellant filed the present breach of warranty action.[1]

In deciding in favor of the appellee, the District Court (Fisher, J.) made the following factual and legal rulings:

> [T]itle to the motorcycle in question is in the plaintiff, ... it has been in the plaintiff since the day the title was delivered to him and ... recorded by an Officer of the State Government by the issuance of a registration card and a certificate of title. ... [T]he history of the title ... shows that there has been no change, [and that] nobody in authority has made a claim against that title. . . . *There has been no superior or paramount title shown, hence, I feel I have no alternative under the circumstances [but] to grant a judgment in favor of the defendant* ....
> [(emphasis added).]

Jefferson appealed this ruling to the Circuit Court for Prince George's County (Woods, J.), which, with one minor

---

1. Jefferson initially claimed a breach of both the warranty of title and the express warranty of description provided in sections 2-312 and 2-313, respectively, of the Commercial Law Article, Md. Code (1975). In this appeal, however, the latter claim has been abandoned.

exception, affirmed Judge Fisher's findings of fact and his interpretation of the relevant law. We granted certiorari, and now explain why we disagree with the two earlier court interpretations of section 2-312 in this action as requiring the buyer to prove superior or paramount title in a third party before a breach of the warranty of title is established.

Section 2-312 of the Maryland Uniform Commercial Code sets forth the warranty of title, relevant here, that is inherent in every sale of goods in this State:

> *Warranty of Title . . .*
>
> (1) Subject to subsection (2) there is in a contract for sale a warranty by the seller that
>
> > (a) The title conveyed shall be good, and its transfer rightful; and
> > (b) The goods shall be delivered free from any security interest or other lien or encumbrance of which the buyer at the time of contracting has no knowledge.
>
> (2) A warranty under subsection (1) will be excluded or modified only by specific language or by circumstances which give the buyer reason to know that the person selling does not claim title in himself or that he is purporting to sell only such right or title as he or a third person may have. [Md. Code (1975), Commercial Law Art., § 2-312.]

Of primary concern in this case is the requirement imposed upon the seller by subsection (1)(a) that a good title be rightfully transferred. In analyzing its meaning we mention that the term "good title" is not one of art with a fixed significance in the law of property, R. Nordstrom, *Handbook of the Law of Sales* § 58, at 185 (1970), nor is it in any way defined by the provisions of the Commercial Law Article. Consequently, as is so often the case with legislative enactments, we must resort to the principles of statutory construction if we are to understand the obligation which section 2-312 establishes.

Although we are directed by the General Assembly to construe the Uniform Commercial Code in a manner which

"make[s] uniform the law among the various [states]" adopting it, Md. Code (1975), Commercial Law Art., §§ 1-102(1), -102(2)(c), we nonetheless utilize, in interpreting the Code, the same principles of statutory construction that we would apply in determining the meaning of any other legislative enactment. *See Fairchild v. Maritime Air Serv.,* 274 Md. 181, 185-86, 333 A.2d 313, 315-16 (1975); 1 R. Anderson, *Uniform Commerical Code* § 1-102:4 (2d ed. 1970). These well settled principles require ascertainment of the legislative intent, and if, as is the case here, construction becomes necessary because the terminology chosen is not clear, then we must consider not only the significance of the literal language used, but the effect of our proposed reading in light of the legislative purpose sought to be accomplished. *E.g., Harbor Island Marina v. Calvert Co.,* 286 Md. 303, 311, 407 A.2d 738, 742-43 (1979); *Fairchild v. Maritime Air Serv., supra,* 274 Md. at 185-86, 333 A.2d at 316. Unlike most state statutory enactments, the U.C.C. is accompanied by a useful aid for determining the purpose of its provisions—the official comments of the Code's draftsmen. While these comments are not controlling authority and may not be used to vary the plain language of the statute, *Frericks v. General Motors Corp.,* 278 Md. 304, 312, 363 A.2d 460, 464 (1976), they are an excellent place to begin a search for the legislature's intent when it adopted the Code. For cases utilizing the comments in a similar manner, *see, e.g., First State Bank at Gallup v. Clark,* 91 N.M. 117, 570 P.2d 1144, 1146 (1977); *Whewell v. Dobson,* 227 N.W.2d 115, 118 (Iowa 1975); *Warren's Kiddie Shoppe, Inc. v. Casual Slacks, Inc.,* 120 Ga. App. 578, 171 S.E.2d 643, 645 (1969). A perusal of the applicable comments here reveals that the purpose of section 2-312 is to provide for a "buyer's basic needs in respect to a title. . . ." Md. Code (1975), Commercial Law Art., § 2-312, comment 1. A seller accomplishes this objective whenever he transfers to his purchaser "a good, clean title . . . in a rightful manner *so that [the buyer] will not be exposed to a lawsuit in order to protect it." Id.* (emphasis added). Thus, in the absence of any indication, express or otherwise, that the General Assembly

intended anything to the contrary, we hold, in accord with the above quoted comments, that the U.C.C.'s warranty of title requirement is to protect a vendee from legal claims which may arise concerning his ownership of the purchased goods. *Accord, Ricklefs v. Clemens,* 216 Kan. 128, 531 P.2d 94, 100 (1975); *American Container Corp. v. Hanley Trucking Corp.,* 111 N.J. Super. 322, 268 A.2d 313, 317-18 (1970). The type or nature, however, of a third party's claim of title or right to possession giving rise to a breach of the warranty is not further delineated by the statute. Consequently, we will now proceed to determine the nature of the claims which the legislature intended should have the protection of the warranty of title provided for in section 2-312.

The intermediate appellate and trial court's answer to this query was that a breach of section 2-312(1)(a) occurs only when a purchaser establishes the existence of a "superior or paramount" title in a third party. These rulings are in accord with the showing that was required at common law before a breach of the implied warranty of title could be found. *See Crisfield v. Storr,* 36 Md. 129, 148-49 (1872); *Myers v. Smith,* 27 Md. 91, 110 (1867); *accord, John St. Auto Wrecking v. Motors Insurance Corp.,* 56 Misc.2d 232, 288 N.Y.S.2d 281, 283 (Civ. Ct. 1968); 2 A. Squillante & J. Fonseca, *Williston on Sales* § 15-18, at 385 (4th ed. 1974); 67 Am. Jur. 2d *Sales* § 482 (1973). However, it is our view that the legislature intended, in accord with the design of the drafters, that the Code's warranty of title would provide a buyer with greater protection than its common law counterpart. Our determination in this regard here is amply supported by the statement in the comments that "[d]isturbance of quiet possession, . . . [which at common law required interference by a holder of a superior or paramount title before a breach was declared, *see Jarrett v. Scofield,* 200 Md. 641, 645-46, 92 A.2d 370, 371-73 (1952),] is one way, *among many,* in which the breach of the warranty of title may be established." Md. Code (1975), Commercial Law Art., § 2-312, comment 1 (emphasis added). Again, finding nothing to the contrary, we therefore conclude that the General Assembly intended that

section 2-312's protection, unless waived by the purchaser,[2] applies to third party claims of title no matter whether eventually determined to be inferior or superior to the buyer's ownership. This conclusion is also in accord with the decisions of those courts in our sister states which have had an opportunity to address this warranty, as well as the authors of leading treatises discussing this provision of the Code. *See Ricklefs v. Clemens, supra,* 531 P.2d at 99-100; *American Container Corp. v. Hanley Trucking Corp., supra,* 268 A.2d at 317-18; *John St. Auto Wrecking v. Motors Insurance Corp., supra,* 288 N.Y.S.2d at 183-84; *Trial v. McCoy,* 553 S.W.2d 199, 200-01 (Tex. Civ. App. 1977); 1 R. Anderson, *supra,* § 2-312:13; W. Hawkland, *Sales & Bulk Sales* 83-84 (3d ed. 1976); R. Nordstrom, *supra,* § 58, at 185; J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 9-11, at 301 (1972). Because of their factual similarity to the case now under consideration, we will examine two of these decisions further. In *American Container Corp. v. Hanley Trucking Corp., supra,* the New Jersey Superior Court considered the question of whether the seizure of a motor vehicle by the police as stolen property due to an irregularity in the vehicle's identification numbers constituted a breach of section 2-312's provisions. Although the evidence arguably established that the vehicle was in fact stolen, the court held this factor to be an irrelevant consideration, *id.* at 317, ruling that:

> The purchaser of goods warranted as to title has a right to rely on the fact that he will not be required, at some later time, to enter into a contest over the validity of his ownership. The mere casting of a substantial shadow over his title, regardless of the ultimate outcome, is sufficient to violate a warranty of good title. [*Id.* at 318.]

The Texas Court of Appeals dealt with a similar situation in

---

2. As the appellee throughout these proceedings has not contended that any type of waiver exists (either under section 2-312(2) or otherwise), we do not consider the matter.

*Trial v. McCoy, supra.* There, an antique pistol purchased by McCoy from Trial was seized by the police as stolen and turned over to a third party claimant. The buyer sued the seller for breach of the warranty of title, but at the ensuing trial, failed to establish that the gun which he purchased had earlier been stolen from another; instead, the buyer produced testimony only tending to show that the gun was taken from his possession by police under a colorable claim of authority and never returned to him. *Id.* at 200-01. As stated by the Texas court: "If there is a duty to prove that the gun was stolen for breach of warranty of title, then Appellee's [(the buyer)] failure to do so would require a reversal of the summary judgment. We are of the opinion, however, that the proof made was sufficient under Section 2.312." *Id.* at 201.

Our holding here, that proof of a superior title is not necessary, does not mean, however, that all claims, no matter how unfounded, which may be made against the buyer's title should result in a breach of the warranty. "Good title" is "usually taken to mean that the title which the seller gives to the buyer is 'free from reasonable doubt, that is, not only a valid title in fact, but [also] one that can again be sold to a reasonable purchaser or mortgaged to a person of reasonable prudence.'" 2 A. Squillante & J. Fonseca, *supra,* § 16-5, at 423 (quoting from *Langford v. Berry,* 68 Ga. App. 193, 22 S.E.2d 349, 351 (1942)). As such, "there is some point at which [a] third party's claim against the goods becomes so attenuated that we should not regard it as an interference against which the seller has warranted." J. White & R. Summers, *supra,* § 9-11, at 301. *Accord,* W. Hawkland, *supra,* at 83-84; R. Nordstrom, *supra,* § 58, at 186-87; 2 A. Squillante & J. Fonseca, *supra.* All that a purchaser should expect from a seller of property is that he be protected from colorable claims against his title and not from all claims. Spurious title claims can be made by anyone at any time. The need for a limitation on the type of claim which will constitute a breach of the warranty was aptly stated by Judge Smith in his opinion for this Court in *Schlosser v. Creamer,* 263 Md. 583,

284 A.2d 220 (1971), as he discussed the analogous area of marketable title in real property law:

> In today's world there is no shortage of individuals willing to litigate on virtually any subject without regard to the soundness of the propositions advanced and, therefore, without regard to the possibility of success. In our affluent society some are blessed with sufficient worldly goods to finance such litigation. Others litigate at the expense of the public treasury. . . . It no doubt was a recognition of human contentiousness that led the courts to speak of reasonable doubt as to marketability and not just as to the possibility of litigation. [*Id.* at 592-93, 284 A.2d at 225.]

*Accord,* W. Hawkland, *A Transactional Guide to the Uniform Commercial Code* § 1.2001, at 92 (1964); R. Nordstrom, *supra,* § 58, at 187. Thus, before a third party's claim against the title of another will result in a breach of the warranty of title, the claim must be colorable, nonspurious and of such a nature as to produce a reasonable doubt as to the title's validity. *See Ricklefs v. Clemens, supra,* 531 P.2d at 100 (substantial shadow of doubt); *American Container Corp. v. Hanley Trucking Corp., supra,* 268 A.2d at 318 (same); *accord, e.g.,* W. Hawkland, *Sales & Bulk Sales, supra,* at 83 (reasonably exposed, nonspurious claim).

Whether a given claim relating to title is sufficient to establish a breach of the warranty under section 2-312 is a mixed question of law and fact. A claimed breach may be based on evidence that is free from dispute and concerning which reasonable minds could not differ as to whether the alleged claim affecting title to the goods is spurious, thus creating a matter of law for determination by the court. On the other hand, if there exists a factual dispute, or an issue relating to the nature of the claim is generated on which reasonable minds may differ, resolution of the matter then rests with the trier of fact. When analyzing the legal questions presented, a court, in our opinion, may profitably draw upon the principles which this Court has developed over

the years for deciding whether title to real property is marketable. *Accord, American Container Corp. v. Hanley Trucking Corp., supra,* 268 A.2d at 318; J. White & R. Summers, *supra,* § 9-11, at 302. Decisions of this Court, stretching back for over 100 years, have discussed the reasonable doubt concept in this regard as it pertains to real property. *See, e.g., Schlosser v. Creamer, supra; Zulver Realty Co. v. Snyder,* 191 Md. 374, 62 A.2d 276 (1948); *Arey v. Baer,* 112 Md. 541, 76 A. 843 (1910); *Gill v. Wells,* 59 Md. 492 (1883); *Buchanan v. Lorman,* 3 Gill 51 (1845). The criteria which have developed essentially require a determination of whether the claim is of such a substantial nature that it may reasonably subject the buyer to serious litigation. *E.g., Schlosser v. Creamer, supra,* 263 Md. at 588-89, 284 A.2d at 223; *Gill v. Wells, supra,* 59 Md. at 495. While such a standard may be considered vague, it is one which courts have successfully applied for many years. Furthermore, the public policy considerations underlying this standard concerning marketability of title to realty are similar to those which section 2-312 was designed to foster in the sales of personalty — to balance the needs of the purchaser concerning title with the litigious nature of our society and the seller's needs for a limit to his liability. *Compare Schlosser v. Creamer, supra,* 263 Md. at 592-93, 284 A.2d at 225, *with American Container Corp. v. Hanley Trucking Corp., supra,* 268 A.2d at 318, *and* W. Hawkland, *A Transactional Guide to the Uniform Commercial Code, supra,* § 1.2001, *and* R. Nordstrom, *supra,* § 58, at 186-87.

When we examine the facts of the case now before us, in light of the legal standard just mentioned, we conclude that, as a matter of law, there exists a warranty of title that has been breached here. An undisputed aspect of possessing good title is that a purchaser be "enable[d] . . . to hold the [property] in peace and, if he wishes to sell it, to be reasonably certain that no flaw will appear to disturb its market value." *New Freedom Corp. v. Brown,* 260 Md. 383, 389, 272 A.2d 401, 404 (1971). Whenever the title to personal property is evidenced by a document which is an aid to proving ownership, as is true in the case of motor vehicles, *see* Md.

Code (1977), Transportation Art., § 13-101.1, any substantial defect in that document necessarily creates a reasonable doubt as to that ownership. A certificate of title, which, with limited exceptions, all owners of motor vehicles must have in this State, *id.* §§ 13-101.1, -102, is prima facie evidence of ownership. *Id.* § 13-107(c). *See Unsat. C. & J. Fund v. U.S.F.&G.,* 256 Md. 412, 415, 260 A.2d 279, 281 (1970); *Keystone Ins. v. Fidelity & Cas.,* 256 Md. 423, 426-27, 260 A.2d 275, 277 (1970); *Huettner v. Sav. Bank of Balto.,* 242 Md. 477, 481-82, 219 A.2d 559, 562 (1966). To be valid, such a certificate must include, among other things, the vehicle's identification number, Md. Code (1977), Transportation Art., § 13-107(a)(5); and while the owner of the vehicle may prove his title by means other than the certificate, *see Huettner v. Sav. Bank of Balto., supra,* 242 Md. at 481-82, 219 A.2d at 562, any seller of a motor vehicle who executes, as required by section 13-112(a) of the Transportation Article, an assignment of the vehicle's certificate of title that contains identifying information that is different from that on the vehicle itself, knows or should know that problems concerning the buyer's ownership would arise. Without a valid title certificate, the owner of a vehicle cannot register, drive or sell it, *see* Md. Code (1977, 1979 Cum. Supp.), Transportation Art., §§ 13-109, -402(b); -401, -701; -112(a), and if problems do arise, as in this case, the seller is responsible for any damages caused. In other words, a breach of the warranty of title occurs whenever a seller of a motor vehicle fails to provide his purchaser with adequate proof of ownership because of the reasonable doubts which faulty documentation raise as to the validity of the buyer's title. *Cf. R. C. Craig Limited v. Ships of Sea Incorporated,* 345 F. Supp. 1066, 1074 (S.D. Ga. 1972) (warranty of title requires seller to deliver all required documentation).

In conclusion, we hold that the warranty of title provided by section 2-312 of the Commercial Law Article does not require proof of a superior title in a third party in order to establish a breach of its provisions, but only a colorable claim or one that is not spurious. Furthermore, we find that in the situation presented here, the appellee, as a matter of law,

breached the title warranty, and accordingly, a verdict should be entered in favor of appellant Thomas N. Jefferson.

> *Judgment of the Circuit Court for Prince George's County reversed and case remanded to it with instructions to reverse the judgment of the District Court and remand the case to that court for the entry of a judgment in favor of Thomas N. Jefferson and against Lawrence V. Jones for such damages as the District Court finds were suffered.*
>
> *Costs in this Court and in the Circuit Court for Prince George's County to be paid by appellee.*