**In re Carl E. HOGAN, a/k/a Hogan Farms, Debtor.**

**HEINOLD HOG MARKET, INC., a Corporation, Plaintiff,**

v.

**Carl E. HOGAN, a/k/a Hogan Farms, and John V. Labarge, Jr., Trustee, Defendants.**

**Bankruptcy No. 83–01642(1).**
**Adv. No. 83–0565(1).**

United States Bankruptcy Court, E.D. Missouri, E.D.

April 11, 1984.

Ray Dickhaner, Hillsboro, Mo., for plaintiff.

Kenneth V. Byrne, Clayton, Mo., for debtor defendant.

John V. LaBarge, Jr., Kirkwood, Mo., trustee defendant.

## MEMORANDUM OPINION

ROBERT E. BRAUER, Bankruptcy Judge.

This Cause presents dischargeability issues under 11 U.S.C. § 523(a)(2).

Debtor Defendant sold encumbered hogs to the Plaintiff, knowing of the encumbrances, without disclosing the encumbrances to the Plaintiff. Debtor received the fair market value for the hogs, from the Plaintiff, on each sale. Payment, on each occasion, was made by check, drawn by the Plaintiff, payable to the Debtor;

Debtor accepted each check as payment. Each check contains a legend, on its reverse side, at the place where normally the payee's endorsement is to be found, which reads " ... by endorsing the payee warrants that the livestock sold are free and clear of liens and claims." Each check was endorsed by the Debtor, his endorsement appearing immediately below the printed legend, and Debtor received the proceeds of each check.

Thereafter, one of the lienors, Missouri Farmers Association, Inc. (Missouri Farmers), filed suit against the Plaintiff, in a State Court of competent jurisdiction, (the Circuit Court of Lincoln County, Mo., Cause No. 283–142–CC) claiming damages (in excess of $56,000) on account of Plaintiff's purchase of said hogs and its subsequent sales of those hogs to others.

Plaintiff, in the State Court cause, filed its Third Party Petition, joining the Debtor as Third Party Defendant, seeking a damage judgment against the Debtor in such amount as the amount of damages, if any, recovered by Missouri Farmers against the Plaintiff.

Bankruptcy intervened, upon a voluntary petition filed September 28, 1983.

Subsequent to bankruptcy, Missouri Farmers filed in this Court its Application For Removal of the State Court cause to this Court. Plaintiff resisted the removal, by appropriate objections. Upon those Objections, after hearing, by order entered October 27, 1983, the Cause was remanded to the State Court, but the Stays of 11 U.S.C. § 362 were terminated to permit Plaintiff's prosecution of the Third Party Petition to final judgment against the Debtor, with the caveat that Plaintiff not enforce any judgment obtained against the Debtor, upon that Petition, except by the timely filing of a proof of claim in this case.

Subsequent thereto, and in timely fashion, Plaintiff initiated this Cause, by a Complaint To Determine Dischargeability [1]. In the Complaint, Plaintiff adverts to the sales of the hogs to it by the Debtor, to Plaintiff's payment for those hogs by a series of checks each of which contained an affirmative representation (as part of the Debtor's endorsement) that the hogs were free and clear and not subject to any liens, and alleges, also, that on the occasion of each sale, Debtor expressly warranted that the hogs were free of liens. Continuing, Plaintiff alleges that if the hogs were subject to a lien held by Missouri Farmers [or another lienor, Community State Bank of Bowling Green (Bank)], then Debtor's representations were fraudulently false and made with intent to deceive, and did deceive (Plaintiff having purchased the hogs in reliance upon said representations), resulting in damages nondischargeable under 11 U.S.C. § 523(a)(2)(A).[2]

The Debtor testified [3] at the trial of the Cause, that (and I so find the facts to be) during 1982, and into 1983, he fed feeder pigs, or raised pigs, to sell as hogs at market weight [4]; that he hauled the hogs to Plaintiff's Hawk Point, MO. (Lincoln County) facility, where they were weighed, and sold to the Plaintiff. On the occasion of each sale, Debtor was paid the market

---

**1.** In the Complaint, Plaintiff describes its claim for damages against the Debtor as a contingent claim, and states that the Dischargeability Cause is filed as a (in) protection of that contingent claim.

Plaintiff joins the bankruptcy Trustee as a Defendant. He is not a proper party to the Cause, and the judgment being entered upon the Complaint will be in his favor.

**2.** Which provides

"A discharge under Section 727 ... of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services, or any extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud other than a Statement respecting the debtor's or an insider's financial condition, or ..."

**3.** He was the only witness called by the parties.

**4.** Debtor raised (and fed) baby pigs, and purchased feeder pigs (50#) and fed them, to where they weighed market weight, 210# to 240#. Feeder pigs were fed to the market weight within 120 days of purchase. Baby pigs were fed to market weight within 180 days of birth or purchase.

value, by check payable to his order.[5] Each check was endorsed by the Debtor, and deposited into his account in the Bank.

Immediately above the endorsement, upon each check, is the printed legend " ... by endorsing the payee warrants that the livestock sold are free and clear of liens and claims."

On the occasion of each sale, the hogs were encumbered, the Bank holding the first lien thereupon, and Missouri Farmers holding the second lien. Debtor knew of the encumbrances at the time of each sale, but did not disclose the existence of the liens to the Plaintiff.

The proceeds of each check were used by the Debtor to pay the Bank as much as the Debtor could on its secured debt, other bills, and if anything was left, to live on. Debtor paid Missouri Farmers as much as he could when he could.

Debtor testified that the Bank, and Missouri Farmers, were aware "of how he was doing business". He'd been in the "hog business" since 1969, and started borrowing from the Bank in 1976.

Debtor did not tell the Plaintiff, or any of its employees, of the liens encumbering the hogs because (as he testified) nobody asked him if there were any liens on the hogs or if he owed any money on the hogs.

. . . .

Each of the sales occurred in Missouri. All during the period during which the sales occurred, Section 400.2–312 V.A.M.S., part of the Missouri Uniform Commercial Code, was in effect. It provides

"(1) Subject to the subsection (2) there is in a contract for sale a warranty by the seller that

(a) the title conveyed shall be good, and its transfer rightful; and

(b) the goods shall be delivered free from any security interests or other lien or encumbrance of which the buyer at the time of contracting has no knowledge." [6]

By reason of these provisions, Debtor warranted, on the occasion of each sale, that the hogs being sold were being sold and delivered free and clear of liens (there being no evidence that plaintiff knew to the contrary). Obviously, the warrant was false on each occasion. Was it fraudulently false within the meaning of 11 U.S.C. § 523(a)(2)(A)?

■ In my judgment, the warrant was fraudulently false, on each occasion, so that Plaintiff's claim(s) against the Debtor for his breach is (are) nondischargeable.

■ Failure to disclose a material fact— or, put another way, silence as to, or concealment of, a material fact—may constitute fraud within the meaning of § 523(a)(2)(A). Such is the teaching of *In re Schnore*, 13 B.R. 249 (Bk.W.D.Wis., 1981), and the line of credit card cases which hold that the debt incurred by a consumer debtor who uses a credit card to effect a credit purchase at a time when he does not intend to pay for such purchase, but does not disclose disinclination to the seller, is nondischargeable. See, also, *In re Crimmins*, 406 F.Supp. 282 (S.D.N.Y., 1975) [where failure to disclose material facts was found to be a deceit, which rendered the debt arising therefrom non-provable under Section 63 of the Bankruptcy Act, 11 U.S.C. § 103 (Bankruptcy Act)].[7]

Prior to the advent of the Uniform Commercial Code, the Vermont Supreme Court, in *Kennett et al. v. Tudor et al*, 99 A. 306, 91 Vt. 70 (1916), in construing Section 17(a)(2) of the Bankruptcy Act, 11 U.S.C. § 35(a)(2) [Bankruptcy Act] [8] held that the

---

**5.** Between March 28, 1972, and March 17, 1983, 61 sales were made; checks for sums totaling $435,095.80 were issued to the Debtor in payment of the hogs sold.

**6.** The knowledge referred to in (1)(b) is actual knowledge as distinguished from notice or constructive knowledge. See the Official Comment to Section 2–312 of the Uniform Commercial Code. Missouri Law, prior to the enactment of

400.2–312(1), so held. See *Ranney v. Meisenheimer* (1895) 61 Mo.App. 434.

**7.** Of precedential value because non-negligence tort claims were not provable under Section 63 of the Bankruptcy Act, and thus were nondischargeable.

**8.** The forerunner of Section 523(a)(2)(A) of the Bankruptcy Code, now under consideration.

bankrupt-seller's liability for damages, sustained by a buyer of encumbered goods from the bankrupt-seller, because of the bankrupt's failure to disclose the liens to the buyer, was *not* discharged by the seller's bankruptcy discharge, the Court determining that the failure to disclose the liens was a species of deceit embraced by Section 17(a)(2), the damages claim not being discharged. The bankrupt's failure to disclose the liens, his silence, was deceitful, according to the Court.[9]

Missouri State Courts, and Bankruptcy Courts in Missouri, have not, so far as my research discloses, passed upon the problem.

However, it is clear that § 400.2–312(1) codifies the law of implied warranty of title in Missouri as that law existed prior to the enactment of that Section. *Universal C.I.T. Credit Corp. v. State Farm Mutual Auto Insurance Co.*, 493 S.W.2d 385 (Mo. App., 1973); *Ivester v. E.B. Jones Motor Co.*, 311 S.W.2d 109 (Mo.App., 1958); *Ranney v. Meisenheimer*, 61 Mo.App. 434 (1895). The warranty of title required by the section is intended to protect the buyer from legal claims which may arise concerning his ownership of the goods, *Jefferson v. Jones*, 286 Md. 544, 408 A.2d 1036 (1979), including the claims of lienors whose liens encumbered the goods purchased by the buyer at the time of purchase. *Fields v. Sugar*, 251 Ark. 1062, 476 S.W.2d 814 (1972). As stated in the official Comment to Section 2–312(1)—"Subsection (1) makes provision for a buyer's *basic needs* in respect of a title which he in good faith expects to acquire by his purchase, namely, that he receive a good, clean title transferred to him, also in a rightful manner so that he will not be exposed to a lawsuit in order to protect it". (Emphasis added)

I believe it is abundantly clear that § 400.2–312(1) proclaims a commercial public policy, that requires the disclosure of liens to a buyer, in any sales transaction, wherein the thing sold is actually encumbered. Agricultural commerce, no less than general mercantile commerce, requires such lien disclosure, to the buyer, by

the seller who, as here, knows of the lien(s); and failure to disclose, where the seller is (as here) knowledgeable as to the existence of liens at the time of the sale, is the equivalent, for dischargeability purposes, to an overt fraudulent representation, nondischargeable under § 523(a)(2)(A).

Debtor's intent to deceive may be, and is, implied from the circumstances. Plaintiff's reliance upon the deception is proved by the fact that market value was paid to the Debtor, for the hogs, without any reduction for the value of the lienor's(s') interest(s) therein.

. . . .

Thus, a case of deceit is made by Plaintiff, without resort to the printed representation appearing upon each of the payment checks. As noted previously, Debtor endorsed each of those checks immediately below that printed representation, which reads

"... by endorsing the payee warrants that the livestock sold are free and clear of liens and claims."

The evidence adduced at the trial does not show that this printed representation was called to Debtor's attention when the first check, in payment of the first sales transaction, was handed or delivered to him. Nor does it show that Plaintiff and Debtor discussed the representation, upon the occasion of the first sales transaction (or, at anytime) as being a condition of delivery and payment of the check. Thus, Debtor's knowledge of the printed representation may have occurred at some time subsequent to his first delivery of hogs to the Plaintiff, and subsequent to Plaintiff's exercise of ownership interests in those hogs; i.e., the first sale may have been effectively completed, except for payment, prior to debtor's endorsement of the check. If so, Plaintiff cannot then be said to have relied upon the printed representation.

Nevertheless, the Debtor continued to sell his (encumbered) hogs to the Plaintiff, accepting each time a check, in payment, containing the representation. Upon each

---

**9.** The decision does not rest upon any affirmative or overt representation.

sale, subsequent to the first, it seems to me reasonable to charge the Debtor with notice of the fact of the representation, and with notice that Plaintiff required the representation to be made as part of the endorsement, and required the representation as an integral part of the sales transaction.[10]

■■■ Absent language to the contrary in an endorsement, the endorsement of a negotiable instrument—even a simple endorsement—constitutes a new, independent, substantive contract upon the instrument (separate and apart from the contractual obligation of the drawer thereof). 11 Am.Jur.2d, *Bills & Notes*, Sec. 349, p. 370. If the endorsement contains a promise of affirmative conduct, that conduct will be required to be performed, for the breach of which an action for damages exists in favor of the promisee. *White Truck Sales of Indianapolis, Ind. v. The Shelby Nat'l Bk. of Shelbyville, Ind.*, 420 N.E.2d 1266 (Ind. App.1981); *The First New Haven Nat'l Bk. v. Statewide Motors, Inc.*, 33 Conn.Sup. 579, 363 A.2d 751 (1976); see *First National Bank & Trust Co. of Evanston v. Rockenbach Chevrolet Sales, Inc.*, 85 Ill.App.2d 392, 229 N.E.2d 1 (1967); *Government of Virgin Islands v. Richards*, 618 F.2d 242, 245 (3 Cir., 1980). If, as here, the endorsement contains an affirmative representation, which is fraudulently false, I do not perceive any reason why that kind of deceit is not embraced by § 523(a)(2)(A) of the

Code; and I so hold that Debtor's representation, made as a part of his endorsements upon the checks—save for the first check—which were fraudulently false, fall within the nondischargeability embraces of said Section.[11]

. . . .

*Damages.* Plaintiff did not prove or attempt to prove damages during the trial of this dischargeability cause. It may in fact not have been damaged by Debtor's fraud, which it recognizes by characterizing its claim against the Debtor as a contingent claim.

The Bank, which held the first lien upon all of the hogs, was paid part of the proceeds of the sales. The Bank's security interest on the hogs that were sold may have exceeded the sales price(s) of the hogs, in which event Missouri Farmers, the subordinate lienor, could not have been damaged by Debtor's sales of the hogs to the Plaintiff and by its conversion of them. If Missouri Farmers is not damaged by those occurrences, then Plaintiff will not have suffered damage by Debtor's fraud.

Or, as Debtor pleaded, in this Cause—but did not offer proof to support the plea—Missouri Farmers may well have been aware of Debtor's repeated sales of its collateral to the Plaintiff without disclosing the liens encumbering that collateral; and may well have been aware of the

---

10. In his Answer to the Complaint, Debtor denies that the printed representation constitutes an affirmative representation, alleging that "the custom and practice in the industry for all the years (Debtor) was in the hog farming business negate any such representation". He also alleges, in the Answer, that Plaintiff "was aware and had actual knowledge of the financial condition of (Debtor) and other hog farmers." He does *not* allege that he did not know of the existence of the printed statement when he endorsed the checks. Evidence was *not* adduced as to *any* custom and practice in the hog farming business; nor was any evidence adduced to prove Plaintiff's knowledge of Debtor's financial condition, or of the existence of liens encumbering the hogs, or of the practice (if there were such a practice) to sell encumbered hogs, at market, with or without the knowledge or implied consent of the lienor(s) without disclosing the lien(s) to the buyer.

11. In *Feeney v. Cook*, 242 S.W.2d 524, 529 (Mo. 1951) the Missouri Supreme Court tells us:

"Recently, this court said: 'It is a general doctrine that, if either party to a transaction conceals some fact which is material, which fact is within his own knowledge, and which it is his duty to disclose, he is guilty of fraud.... "If in addition to the party's silence there is any statement, even any word or act on his part, which tends affirmatively to a suppression of the truth, to a covering up or disguising the truth, or to withdrawal or distraction of the other party's attention or observation from the real facts, then the line is overstepped, and the concealment becomes fraudulent." Vol. 3, Pomeroy's Equity Jurisprudence, 5th Ed., Sections 901–901a, pp. 545–549; (cases).' *Ash Grove Lime & Portland Cement Co. v. White*, 361 Mo. 1111, 238 S.W.2d 368, 372."

need, if so, for such sales in order to permit the Debtor to provide sustenance for himself and his family. Competent proof of that knowledge may be adduced in the non-bankruptcy court cause, which, if believed, will serve to exonerate Plaintiff from any damage claim of Missouri Farmers, and, if so, to insulate the Debtor from any claim by Plaintiff arising by reason of the deceit.

Plaintiff's counsel now advises that Missouri Farmers has dismissed its cause which was pending in the State Court (where this Plaintiff was a Defendant who brought Debtor in as a third-party Defendant, pursuant to third-party practice), but has filed a similar damage claim cause in the United States District Court for this District, where the cause is now in the motion stage.[12]

Plaintiff will be permitted to attempt to bring the Debtor into that cause by practice under Rule 14 of the Federal Rules of Civil Procedure, where Debtor, if joined, will be permitted to resist, actively, Missouri Farmer's claim against the Plaintiff and, by so doing, resist Plaintiff's claim to damage against him. Also, that participation in the litigation will permit Debtor to participate in any settlement negotiations if that be in the best interest of all the parties. Any judgment obtained by Plaintiff, against the Debtor, by settlement or otherwise, in that cause will be nondischargeable.

If Plaintiff is not permitted to join Debtor pursuant to such third Party Petition, or is not permitted to prosecute its damage claim against Debtor to final judgment in that cause for any reason, then upon proper application, by the Plaintiff, this Cause will be reinstated upon this Court's trial docket for trial on the issues of damages only.

Or, if said District Court cause is dismissed, for failure of jurisdiction, and Missouri Farmers institutes litigation against Plaintiff in a State Court of competent jurisdiction, then Plaintiff is to be permitted to join the Debtor, in that cause, upon third-party practice, and permitted to prosecute its claim to final disposition by judgment or otherwise. And, again, if Plaintiff is not permitted to join the Debtor, in such cause, by such practice, then upon proper application by the Plaintiff this cause will be reinstated upon this Court's trial docket for trial on the issue of damages only.

---

**12.** The Cause is styled *Missouri Farmers Association, Inc., a Missouri Corporation, Plaintiff v. Heinold Hog Market, Inc., a Delaware Corporation,* Defendant, Cause 84–0149–C, filed January 16, 1984. Jurisdiction is diversity jurisdiction. Defendant Heinold, on March 26, 1984, filed its Motion To Dismiss, assertedly under FRCP 19, for failure to join Community State Bank, referred to Supra, as a necessary party Defendant, which, if joined as such, would assertedly deprive the Court of jurisdiction. The Motion has not been ruled. Defendant Heinold has not filed any Motion, pursuant to the Rule 14 Third Party Practice, to join the Debtor.