UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

GARY MARLAND, Trustee of Marland
Enterprises, Incorporated,
*Plaintiff-Appellant,*

and

MARLAND ENTERPRISES,
INCORPORATED,
*Plaintiff,*

v.

SAFEWAY, INCORPORATED,
*Defendant-Appellee.*

No. 02-1457

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, District Judge.
(CA-00-2773)

Argued: December 5, 2002

Decided: January 17, 2003

Before KING, Circuit Judge,
Henry M. HERLONG, Jr., United States District Judge for the
District of South Carolina, sitting by designation, and
James P. JONES, United States District Judge for the
Western District of Virginia, sitting by designation.

Affirmed by unpublished opinion. Judge Jones wrote the opinion, in
which Judge King and Judge Herlong joined.

**COUNSEL**

**ARGUED:** Tracey E. Mulligan, Jr., Rockville, Maryland, for Appellant. Laurie A. Erdman, DILLINGHAM & MURPHY, L.L.P., Washington, D.C., for Appellee. **ON BRIEF:** Tracey E. Mulligan, Jr., Rockville, Maryland, for Appellant. Laurie A. Erdman & Albert A. Foster, Jr., DILLINGHAM & MURPHY, L.L.P., Washington, D.C., for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

JONES, District Judge:

Gary Marland, Trustee of Marland Enterprises, Incorporated, appeals the district court's order awarding summary judgment to Safeway, Incorporated, the Appellee, on Marland's claims for breach of contract and deceit. Finding no reversible error, we affirm.

I.

Marland Enterprises, Incorporated filed suit against Safeway, Incorporated ("Safeway") in the Circuit Court for Montgomery County, Maryland, for claims arising out of a contractual relationship between the parties. Gary Marland, a former director and president of the corporation, was substituted as plaintiff when it was determined that Marland Enterprises, Incorporated had forfeited its charter.[1] Safeway then removed the case to the United States District Court for the District of Maryland.

---

[1]We will hereafter refer to both Marland Enterprises, Incorporated and Gary Marland, Trustee, the Appellant, as "Marland."

Prior to trial, both Safeway and Marland filed motions for summary judgment. The district court granted summary judgment for Safeway on all eight counts of the Amended Complaint except for a portion of the claims under Count IV.[2]

Marland was a Maryland corporation in the business of selling janitorial and cleaning products and providing repair and maintenance service on these products. Marland first began to provide services and products to Safeway for use in its grocery stores pursuant to a contract in 1989. Marland sued Safeway in 1993 alleging breach of contract, civil conspiracy, and fraud. The parties were able to settle the case prior to trial and under the Settlement Agreement, Safeway paid Marland $50,000 and agreed to execute a new three-year contract with Marland.

The new contract, which incorporated by reference the terms of the Settlement Agreement, was signed on October 5, 1994, and ran from November 1, 1994, to October 31, 1997. The contract set forth certain products and services that were to be provided by Marland to Safeway. First, Marland was to provide Safeway with floor care products at set prices. A variety of qualifying products were listed in Schedule 2 of the contract, or Safeway had the option to "change the floor care chemicals used or . . . purchase name brand products at a national volume discount." In the event that Safeway purchased its own products, the products were to be delivered to Marland and Safeway would pay Marland a twenty percent markup for "handling, storing and service to Safeway stores."

The contract further provided that Marland was to perform maintenance on Safeway's floor buffers and floor scrubbers with the understanding that Safeway planned to "phase out" use of the floor buffers and therefore, maintenance would no longer be required.

The contract also provided that Marland was to be paid for any product or service within thirty days after receipt of an invoice by Safeway. In the event of a breach of the contract, the parties were to

---

[2]The parties later settled the remaining claims in Count IV. A final judgment was entered in the case and Marland noted this appeal.

attempt to resolve the breach in good faith, and if unable to do so, to engage in mediation according to certain terms and conditions.

Prior to or just after commencement of the contract, Safeway notified Marland that Safeway would be phasing out the use of floor buffers and going to a "non-buff" floor care system. Thus, there was no maintenance or repair of the floor buffers under the agreement. Marland did provide maintenance services on the floor scrubbers, but Safeway did not order any such services until April of 1995.

Between October 5 and November 1, 1994, Marland began to stockpile various floor cleaning products listed in Schedule 2 of the contract. However, just prior to or just after commencement of the contract, Marland was notified that Safeway would use only the Johnson Wax products listed in Schedule 2 of the contract.

Count I of Marland's Amended Complaint alleged that Safeway had breached the contract by not allowing Marland to provide repair and maintenance services on both the floor buffers and floor scrubbers. However, as to the floor buffers, the district court held that the statute of limitations began to run in November of 1994, when Marland was notified that the floor buffers were being phased out. Similarly, as to the floor scrubbers, while there may have been a breach, the statute of limitations began to run at the latest in April of 1995, when Safeway began to order maintenance on the floor scrubbers. The present suit was not filed until September 9, 2000,[3] well after the four-year statute of limitations had run on both parts of the count. Thus, the district court granted summary judgment for Safeway on Count I without addressing the merits of Marland's claims.

Marland asserted in Count II that Safeway had breached the contract by refusing to accept agreed upon floor cleaning products and demanding only Johnson Wax products. Again, the district court found that Marland had knowledge of the alleged breach in November of 1994 when Safeway required Marland to supply only Johnson Wax

---

[3]The suit was initially filed in state court on July 28, 2000, but the parties are agreed that the effective filing date was when Gary Marland was substituted as plaintiff.

products. Thus, the district court held that the four-year statute of limitations had run on this count as well.

In Count III, Marland alleged that Safeway had breached the contract by delaying payment to Marland for goods and services provided. As a result of the delayed payments, Marland alleged consequential damages, including lost profits. The district court, in granting summary judgment for Safeway on this count, found that Safeway, at the time of the contract, could not have reasonably foreseen these losses.

Count IV asserted that Safeway had breached the contract by failing to pay certain invoices. Here, the district court granted summary judgment for Safeway only for those invoices that were due prior to September 8, 1996, four years before the suit. Summary judgment was denied for failure to pay invoices due after September 8, 1996, and those claims were later settled.

In Count V, Marland alleged that Safeway had breached the contract by failing to pay interest on delayed payments. The district court held that while there may have been some interest due for invoices dating after September 8, 1996, there is "no separate cause of action for this." The district court noted that any interest owed is "purely discretionary when the Court hears the case." Thus, summary judgment was granted for Safeway on Count V.

Marland asserted in Count VI that Safeway had breached the contract by refusing to mediate the other disputes. The district court granted summary judgment for Safeway on this count on several grounds. First, the district court held that there is no cause of action for refusal to mediate. Second, it held that even if there was a cause of action, there were no cognizable damages. Finally, even if there were damages, the court found that the statute of limitations had run because the contract breaches had occurred more than four years before suit was filed.

Count VII alleged that Safeway had breached the implied covenant of good faith and fair dealing. However, the district court held that no such independent cause of action exists under Maryland law. Thus, summary judgment was granted for Safeway on Count VII.

Finally, Count VIII alleged deceit, specifically claiming that Safeway induced Marland to enter into the Settlement Agreement by making false promises about certain provisions in the new contract. Marland argued that Safeway falsely represented that it would accept floor care products other than Johnson Wax products but instead accepted only Johnson Wax products. Marland presented evidence that at least one Safeway employee had stated that "Safeway would never go to Johnson products." The district court held that even if the Safeway employee had made a false representation, Marland presented no evidence that the Safeway employee had known the statement was false, as required to establish a claim for deceit. Finally, the district court held that even if the Safeway employee had known that his statement was false, the tort statute of limitations in Maryland (three years) had run on that claim.

Marland also claimed that it did not know until discovery in the case that Safeway had no national discount contract with Johnson Wax, which contract was allegedly the justification for designating those products. The district court held that there was no competent evidence that there was no such contract, even if its absence was relevant to any deceit claim.

## II.

We review the district court's summary judgment decision de novo. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 928 (4th Cir. 1995). However, the court may affirm on any ground presented in the record, even if it was not the basis on which the district court relied in granting summary judgment. *See Bryant v. Bell Atlantic Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). Because this is a diversity case, Maryland law provides the substantive rules of decision. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78-79 (1938).

## A.

Marland first contends that the district court erred in finding that Counts I, II, and part of Count IV were time barred because the four-year statute of limitations had run. Neither party disputes that the district court correctly determined this to be a sales contract and accord-

ingly applied the four-year statute of limitations found in Maryland's version of the Uniform Commercial Code. *See* Md. Code Ann., Com. Law I § 2-725 (2002). Importantly, this statute begins to run "when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." *Id*. However, noting that section 2-725 "does not alter the Maryland law of tolling," Marland asserts on appeal that the statute of limitations should have been tolled under the "continuation of events" theory.

It is settled that "issues raised for the first time on appeal generally will not be considered." *Muth v. United States*, 1 F.3d 246, 250 (4th Cir. 1993). There are exceptions to this rule, such as when refusal to consider the new issue would be plain error or would result in a fundamental miscarriage of justice, but those exceptions are applied only in limited circumstances. *See id*. Marland admits that the tolling theory presented on appeal was not directly asserted to the district court.

Nevertheless, even if *Muth* did not bar consideration of the tolling issue, we find that it has no merit. The continuation of events theory provides that "in cases where there is an undertaking which requires a continuation of services, or the party's right depends upon the happening of an event in the future, the statute begins to run only from the time the services can be completed or from the time the event happens." *Washington, B. & A. Elec. R.R. v. Moss*, 100 A. 86, 89 (Md. 1917). Marland asserts that because the contract required continuing services, the statute of limitations did not begin to run until the contract completion date, October 31, 1997. However, the continuation of events theory has never been applied in any Maryland sale of goods case. Instead, the theory has been reserved for professional malpractice suits and other situations involving confidential relationships:

> [T]he continuation of events theory is premised on the notion "that a relationship which is built on trust and confidence generally gives the confiding party the right to relax his or her guard and rely on the good faith of the other party so long as the relationship continues to exist." Consequently, the confiding party is not under a "duty to make inquiries about the quality or bona fides of the services

received unless and until something occurs to make him or her suspicious."

*Berringer v. Steele*, 758 A.2d 574, 603 (Md. Ct. Spec. App. 2000) (*quoting Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 756 A.2d 963, 975 (Md. 2000)). Here, there was no confidential relationship. The contract between Marland and Safeway was simply a routine business arrangement.

We thus find that the district court correctly decided that Counts I, II, and part of IV are time barred. Marland did not file suit in the present case until September 9, 2000, and the contract breaches relevant to Counts I, II, and part of IV occurred prior to September 9, 1996. Accordingly, the district court appropriately granted summary judgment for Safeway on these counts.

### B.

The next issue presented on appeal is whether the district court erred in granting summary judgment for Safeway on Marland's deceit claim, Count VIII. This count alleged that Safeway induced Marland to enter into the Settlement Agreement by making false representations.

To prove deceit under Maryland law, a plaintiff must show the following elements: 1) the defendant made a false representation to the plaintiff; 2) the falsity was either known to the defendant or the representation was made with reckless indifference as to its truth; 3) the misrepresentation was made for the purpose of defrauding the plaintiff; 4) the plaintiff relied on the misrepresentation and had the right to rely on it; and 5) the plaintiff suffered compensable injury resulting from the misrepresentation. *See Nails v. S & R, Inc.*, 639 A.2d 660, 668 (Md. 1994). For such a tort claim, there is a three-year statute of limitations. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101 (2002).

The district court found that Marland had not established the necessary elements for deceit because it had not presented evidence that when the alleged misrepresentations were made, the Safeway employees making the misrepresentations knew them to be false. The district

court further found that even if the elements were established, the statute of limitations had run.

Marland argues for the first time on appeal that the statute of limitations for this claim did not begin to run until Safeway's deceit was discovered, under Maryland's discovery rule. *See Hecht v. Resolution Trust Corp.*, 635 A.2d 394, 399 (Md. 1994). Again, this argument was not presented to the district court and thus cannot be considered by this court on appeal. *See Muth*, 1 F.3d at 250. In any event, regardless of the statute of limitations issue, the district court correctly determined that Marland had not established the necessary elements for a claim of deceit under Maryland law and thus summary judgment was proper.

C.

Marland further asserts that the district court erred in granting summary judgment for Safeway on Marland's claim for consequential damages, Count III. Marland specifically claimed that Safeway's failure to timely pay invoices resulted in "delayed payments to [Marland's] suppliers [which] resulted in loss of credit, loss of product distributorships and loss of customers that were an essential part of Marland's on-going business." Even though we find that any breach of contract claim for unpaid invoices that arose prior to September 9, 1996, is time barred, we must address the viability of a consequential damages claim for those unpaid invoices arising after September 8, 1996.

In order to recover consequential damages under Maryland law, such damages must have been foreseeable to the breaching party at the time the contract was entered into. *See Stone v. Chicago Title Ins. Co. of Md.*, 624 A.2d 496, 501 (Md. 1993). The district court, in granting summary judgment for Safeway, held that any damages resulting from delayed invoice payments were not reasonably foreseeable by Safeway at the time of the contract.

Marland did submit evidence that in March of 1995 and February of 1997, Marland had notified Safeway that its delay in paying invoices was causing harm to Marland's business. However, Marland submitted no evidence that Safeway had knowledge of the likelihood

of such damage at the time the contract was entered into. While Marland asserts that a question of fact remains on the issue of foreseeability based on its prior dealings with Safeway and Safeway's understanding that delayed invoice payments caused harm to Marland's business, Marland has presented no evidence supporting its claim beyond mere speculation.

Further, even if such damages were foreseeable by Safeway, other elements of the claim were not satisfied. Marland's Amended Complaint asserts a "loss of customers," which is essentially a claim for lost profits. To recover lost profits under Maryland law, Marland would have to prove, in addition to foreseeability, that Safeway's breach caused Marland to lose customers. *See Impala Platinum Ltd. v. Impala Sales (U.S.A.), Inc.*, 389 A.2d 887, 907 (Md. 1978). Evidence in the record indicates that Marland was losing customers prior to the time of the new contract with Safeway and prior to any late payment by Safeway, thus negating any showing of causation. Accordingly, the district court appropriately granted summary judgment for Safeway on Marland's consequential damages claim.

D.

The next issue presented by Marland on appeal is whether the district court erred in granting summary judgment for Safeway on Marland's claim for failure to mediate, Count VI. The contract does contain a clause which compels the parties to resolve any dispute through mediation. While Marland may at one time have had an action for specific performance to compel mediation, it sought only damages resulting from failure to mediate. We do not find any evidence in the record supporting such a damage claim.

Further, even if such evidence had been submitted, Marland would be required to prove that such damages were foreseeable to Safeway at the time the contract was entered into. Because no such evidence was submitted, we hold that the district court appropriately granted summary judgment for Safeway on this count.

E.

Finally, Marland asserts that the district court erred in granting summary judgment for Safeway on Count VII, breach of the implied

covenant of good faith and fair dealing. The district court held that there is no such cause of action under Maryland law.

Maryland law recognizes an implied duty of good faith and fair dealing in sales contracts. *See* Md. Code Ann., Com. Law I § 1-203 (2002). There is one decision from the District of Maryland that recognizes a separate cause of action for breach of this implied duty. *See Quality Auto. Co. v. Signet Bank/Md.*, 775 F. Supp. 849, 851 (D. Md. 1991). However, a subsequent case from a Maryland court called that decision into question, *see Parker v. Columbia Bank*, 604 A.2d 521, 531 (Md. Ct. Spec. App. 1992), and a more recent case from the District of Maryland held that under Maryland law, there is no separate cause of action for breach of the duty of good faith and fair dealing. *See Howard Oaks, Inc. v. Md. Nat'l Bank*, 810 F. Supp. 674, 677 (D. Md. 1993). Four subsequent cases have upheld *Howard Oaks*.[4] *See Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190 F. Supp. 2d 785, 794 (D. Md. 2002); *Paramount Brokers, Inc. v. Digital River, Inc.*, 126 F. Supp. 2d 939, 945 (D. Md. 2000); *Abt Assoc., Inc. v. JHPIEGO Corp.*, 104 F. Supp. 2d 523, 534 (D. Md. 2000); *Baker v. Sun Co. (R&M)*, 985 F. Supp. 609, 610 (D. Md. 1997). We agree

---

[4]The decision in *Howard Oaks* is further supported by the comments to Maryland's Uniform Commercial Code section 1-203, which were drafted in 1994, after *Howard Oaks* was handed down:

> This section does not support an independent cause of action for failure to perform or enforce in good faith. Rather, this section means that a failure to perform or enforce, in good faith, a specific duty or obligation under the contract, constitutes a breach of that contract or makes unavailable, under the particular circumstances, a remedial right or power. This distinction makes it clear that the doctrine of good faith merely directs a court towards interpreting contracts within the commercial context in which they are created, performed, and enforced, and does not create a separate duty of fairness and reasonableness which can be independently breached.

Md. Code Ann., Com. Law I § 1-203 cmt. (2002).

Although these comments are not controlling, they are a "useful aid for determining the purpose of [the U.C.C.]." *Jefferson v. Jones*, 408 A.2d 1036, 1039 (Md. 1979).

with the weight of this authority that no independent cause of action of this type is recognized in Maryland.

Accordingly, the district court appropriately granted summary judgment for Safeway on this count.

### III.

For the reasons stated, the judgment of the district court is affirmed.

*AFFIRMED*